No. 24-6398

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

KEVIN SNODGRASS, JR.,

*Plaintiff-Appellant,*

v.

CHRISTOPHER GILBERT; REANNE KEGLEY, Counselor at ROSP;
AMEE DUNCAN, Counselor at ROSP; TORI RAIFORD, Unit Manager
at ROSP; WALTER SWINEY, Unit Manager at ROSP; GARRY AD-
AMS, Lieutenant at ROSP; E.R. BARKSDALE, Head Warden at ROSP;
JOHN HAMILTON, Asst. Warden at ROSP; GERALD WASHINGTON,
Central Classification Services VADOC; DAVID A. STILL, Cap-
tain/Unit Manager at ROSP; A. GALLIHAR, Major/Chief of Housing
and Program at ROSP; HENRY PONTON, Region Director-Western
VADOC; KELLY M. STEWART, Counselor at ROSP,

*Defendants-Appellees.*

_____

On Appeal from the United States District Court
For the Western District of Virginia at Roanoke

_____

**BRIEF FOR PLAINTIFF-APPELLANT KEVIN SNODGRASS, JR.**

_____

Benjamin D. Singer
Meredith N. Garagiola
*Court-Assigned Counsel*
Virginia N. Oat
Brian P. Quinn
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, D.C. 20006-4001
(202) 383-5300 (telephone)
(202) 383-5414 (facsimile)

*Counsel for Plaintiff-Appellant Kevin Snodgrass, Jr.*

# TABLE OF CONTENTS

**Page**

JURISDICTIONAL STATEMENT ..........................................................1

STATEMENT OF ISSUES..................................................................2

STATEMENT OF CASE ......................................................................3

    I.    Factual History ......................................................................3

          A.    A Red Onion Officer Maces Snodgrass Three
              Times ................................................................................3

          B.    Red Onion Officers Repeatedly Label Snodgrass a
              "Snitch" for Participating in a Civil Suit Against
              Red Onion Officers. .......................................................6

          C.    Red Onion Officers Delay Snodgrass's Progress
              Through the Step-Down Program. ...............................8

    II.    Procedural History ..............................................................12

SUMMARY OF ARGUMENT ................................................................17

ARGUMENT ......................................................................................21

    I.    The District Court Erred in Granting Summary
        Judgment on Snodgrass's "Snitch" Retaliation Claim. ........21

          A.    Legal Standard..............................................................22

          B.    Snodgrass Alleged A Violation Of The Clearly
              Established Right To Be Free From Retaliation
              For Participating In Protected First Amendment
              Conduct. ........................................................................22

          C.    Defendants Gilbert and Adams Are Not Entitled
              To Qualified Immunity. ...............................................28

    II.    The District Court Erred in Granting Summary
        Judgment on Snodgrass's Excessive Force Claim................32

          A.    Legal Standard..............................................................32

B.    Contrary to the District Court's Decision, Snodgrass Raised Issues of Material Fact on the Subjective Component of His Eighth Amendment Claim Such That Defendants Were Not Entitled to Judgment as a Matter of Law ................................. 34

C.    Because Snodgrass Established a Triable Eighth Amendment Claim Under Clearly Established Law, Gilbert Was Not Entitled to Qualified Immunity ..................................................... 45

III.   The District Court Erred When It Denied Snodgrass's Request to Supplement His Complaint Because It Applied the Wrong Legal Standard ...................................... 46

IV.   The District Court Committed A Reversible Error When It Entered Judgment For Defendants On Snodgrass's Step-Down Retaliation Claim .......................... 50

A.    The District Court Erred In Concluding That Snodgrass Had Not Established A *Prima Facie* Case For Retaliation Regarding Delays From Levels SM-0 To SM-1 ................................................... 51

B.    The District Court Erred In Ruling For Defendants Regarding The Delays Snodgrass Experienced At Level SM-1 ....................................... 57

CONCLUSION ......................................................................... 60

REQUEST FOR ORAL ARGUMENT ..................................... 61

CERTIFICATE OF COMPLIANCE ......................................... 62

CERTIFICATE OF SERVICE ................................................. 63

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU of Md., Inc. v. Wicomico Cnty.,*
999 F.2d 780 (4th Cir. 1993)................................. 21, 23, 53

*Alexander v. Connor,*
105 F.4th 174 (4th Cir. 2024) ............................. 45

*Allah v. Seiverling,*
229 F.3d 220 (3d Cir. 2000) ............................. 52

*Anderson v. Creighton,*
483 U.S. 635 (1987)............................................ 29

*Ashcroft v. al-Kidd,*
563 U.S. 731 (2011)...................................... 29, 31

*Benefield v. McDowall,*
241 F.3d 1267 (10th Cir. 2001).......................... 25

*Blount v. Adams et al.,*
Case No. 7:15-cv-00439 (W.D. Va. 2015).......................... 6, 7

*Bonds v. Leavitt,*
629 F.3d 369 (4th Cir. 2011)............................. 45

*Booker v. S.C. Dep't of Corr.,*
583 F. App'x 43 (4th Cir. 2014)......................... 24

*Booker v. South Carolina Department of Corrections,*
855 F.3d 533 (4th Cir. 2017)........................... 15, 21, 23, 31

*Boone v. Stallings,*
583 F. App'x 174 (4th Cir. 2014)..................... 18, 33

*Brooks v. Johnson,*
924 F.3d 104 (4th Cir. 2019)......................... passim

*Brunson v. Nichols,*
875 F.3d 275 (5th Cir. 2017)............................. 54

*Buonocore v. Harris,*
65 F.3d 347 (4th Cir. 1995)............................. 46

*Burns v. Martuscello,*
  890 F.3d 77 (2d Cir. 2018) ..................................................25

*Constantine v. Rectors & Visitors of George Mason Univ.,*
  411 F.3d 474 (4th Cir. 2005)...................................... passim

*Dean v. Jones,*
  984 F.3d 295 (4th Cir. 2021)..................................... passim

*Franks v. Ross,*
  313 F.3d 184 (4th Cir. 2002)....................................... 19, 48

*Gullatte v. Potts,*
  654 F.2d 1007 (5th Cir. 1981) ..........................................25

*Harmon v. Berry,*
  728 F.2d 1407 (11th Cir. 1984)...................................25, 31

*Hart v. Hairston,*
  343 F.3d 762 (5th Cir. 2003)............................................54

*Huang v. Bd. of Governors of Univ. of N.C.,*
  902 F.2d 1134 (4th Cir. 1990), *as amended* May 8, 1990...................27

*Hudspeth v. Figgins,*
  584 F.2d 1345 (4th Cir. 1978)....................................21, 31

*Iko v. Shreve,*
  535 F.3d 225 (4th Cir. 2008)..................................... passim

*Irving v. Dormire,*
  519 F.3d 441 (8th Cir. 2008)............................................25

*Jackson v. Peterson,*
  100 F.3d 956 (6th Cir. 1996)................................24, 25, 30

*Keith v. Volpe,*
  858 F.2d 467 (9th Cir. 1988)............................................48

*Koon v. United States,*
  518 U.S. 81 (1996)...................................................47, 49

**Page**

*LaSalvia v. United Dairymen of Ariz.*,
  804 F.2d 1113 (9th Cir. 1986) ............................................................. 50

*Lewis v. Casey*,
  518 U.S. 343 (1996) .................................................................... 21, 23

*Martin v. Duffy*,
  858 F.3d, 239 (4th Cir. 2017) ...................................................... 23, 52

*Martin v. Duffy*,
  977 F.3d 294 (4th Cir. 2020) .............................................. 1, 16, 26, 56

*Meyers v. Balt. Cnty.*,
  713 F.3d 723 (4th Cir. 2013) ............................................................ 41

*Miller v. Leathers*,
  913 F.2d 1085 (4th Cir. 1990) ...................................................... 25, 31

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,
  429 U.S. 274 (1977) .............................................................. 26, 27, 55

*New Amsterdam Cas. Co. v. Waller*,
  323 F.2d 20 (4th Cir. 1963) ......................................................... 19, 48

*Orem v. Rephann*,
  523 F.3d 442 (4th Cir. 2008) ....................................................... 35, 44

*Parker v. Stevenson*,
  625 F. App'x 196 (4th Cir. 2015) ...................................................... 45

*PBM Prods. LLC v. Mead Johnson & Co.*,
  639 F.3d 111 (4th Cir. 2011) ....................................................... 47, 51

*Pearson v. Callahan*,
  555 U.S. 223 (2009) .............................................................. 22, 28, 29

*Pickering v. Bd. of Educ.*,
  391 U.S. 563 (1968) ........................................................................ 29

*Reece v. Groose*,
  60 F.3d 487 (8th Cir. 1995) ............................................................. 25

*Rivera v. Marcoantonio,*
153 F. App'x 857 (3d Cir. 2005) .......................................................25

*Rowe v. U.S. Fid. & Guar. Co.,*
421 F.2d 937 (4th Cir. 1970) .....................................................47, 49

*Shaw v. Foreman,*
59 F.4th 121 (4th Cir. 2023) ...........................................................27

*Snodgrass v. Messer,*
694 F. App'x 157 (4th Cir. 2017) .....................................................30

*Snodgrass v. Messer,*
No. 7:16CV00050, 2017 WL 975992 (W.D. Va. Mar. 10,
2017) ..............................................................................................30

*Streckenbach v. Meisner,*
768 F. App'x 565 (7th Cir. 2019) .....................................................24

*Suarez Corp. Indus. v. McGraw,*
202 F.3d 676 (4th Cir. 2000) ...........................................................29

*Thompson v. Virginia,*
878 F.3d 89 (4th Cir. 2017) .............................................................32

*Tobey v. Jones,*
706 F.3d 379 (4th Cir. 2013) ...........................................................27

*United States ex rel. Carter v. Halliburton Co.,*
866 F.3d 199 (4th Cir. 2017) ...........................................................47

*United States v. Ancient Coin Collectors Guild,*
899 F.3d 295 (4th Cir. 2018) ...........................................................22

*Valandingham v. Bojorquez,*
866 F.2d 1135 (9th Cir. 1989) .............................................24, 25, 30

*Whitley v. Albers,*
475 U.S. 312 (1986) ..............................................................32, 33, 34

*Wilkins v. Gaddy,*
559 U.S. 34 (2010) ..........................................................................33

**Page**

*Williams v. Benjamin,*
    77 F.3d 756 (4th Cir. 1996)................................................39

*Williams v. Griffin,*
    952 F.2d 820 (4th Cir. 1991)..............................................22

*Williams v. Horner,*
    403 F. App'x 138 (8th Cir. 2010).......................................30

*Wilson v. Seiter,*
    501 U.S. 294 (1991)..............................................33, 34

**Statutes**

28 U.S.C. § 1291 ..................................................................1

28 U.S.C. § 1331 ..................................................................1

28 U.S.C. § 636(c)(1) ..........................................................1

42 U.S.C. § 1983 ................................................................22

**Other Authorities**

3 James Wm. Moore, *Moore's Federal Practice* ¶ 15.16 (3d ed.
    1985)...................................................................48

**Rules**

Fed. R. Civ. P. 15(d)............................................................47

Fed. R. Civ. P. 52................................................................51

Fed. R. Civ. P. 56(a)............................................................22

# JURISDICTIONAL STATEMENT

The district court exercised jurisdiction over this case under 28 U.S.C. § 1331.  On March 17, 2017, the district court dismissed claims against multiple Defendants without prejudice.  JA413.  U.S. Magistrate Judge Pamela Meade Sargent presided over two bench trials and entered final judgment in favor of Defendants on all remaining claims on December 18, 2018.  JA620.  Plaintiff Kevin Snodgrass, Jr. filed a timely notice of appeal on December 28, 2018.  JA624.  This Court remanded the case without decision on October 23, 2020 in light of its intervening decision in *Martin v. Duffy*, 977 F.3d 294 (4th Cir. 2020), and directed the district court to reconsider one of the claims in light of that decision.  JA627.  The parties consented to having a magistrate judge preside over the case pursuant to Rule 28 U.S.C. § 636(c)(1), JA693, and the district court entered final judgment in favor of Defendants on the remaining claim.  JA742.  Plaintiff filed a timely notice of appeal from the district court's order on April 25, 2024.  JA743.  This Court has appellate jurisdiction under 28 U.S.C. § 1291.

# STATEMENT OF ISSUES

This appeal presents the following questions:

1.     Did the district court commit reversible error in granting summary judgment on Snodgrass's claim that Defendants Adams and Lewis violated his First Amendment rights by retaliating against him by calling him a "snitch" for exercising his right to petition the courts, even though the district court acknowledged that Defendants' conduct supported a retaliation claim and in the face of substantial contrary authority?

2.     Did the district court commit reversible error in granting summary judgment for Defendant Gilbert on Snodgrass's excessive force claim when Gilbert unjustifiably fired multiple rounds of pepper spray into Snodgrass's face while he was locked alone in his cell?

3.     Did the district court commit reversible error when it denied Snodgrass's request to supplement his complaint because the new allegations did not "arise from the same sequence of events" as those in the original complaint, an incorrect legal standard that substantially exceeded what is required by established precedent?

4. Did the district court commit reversible error by ruling that Snodgrass failed to make out a *prima facie* case for retaliation with regard to Defendants' intentionally delaying his progression through the Step Down program, despite acknowledging that officials delayed his time in segregation by over a month?

## STATEMENT OF CASE

### I. Factual History

Kevin Snodgrass, Jr. is a prisoner in the Virginia state correctional system. Snodgrass was serving his sentence at Red Onion State Prison ("Red Onion" or "ROSP") at the time of all events alleged.

### A. A Red Onion Officer Maces Snodgrass Three Times

On September 21, 2015, a correctional officer approached Snodgrass's cell and, speaking through the still-closed cell door, demanded that Snodgrass "cuff up." JA27. When Snodgrass asked why he needed to be restrained, the officer told Snodgrass that Defendant Lieutenant Christopher Gilbert had ordered Snodgrass to be transferred to segregated housing (i.e., solitary confinement). JA27. Snodgrass stated (correctly) that Virginia Department of Corrections ("VDOC") policy did not require him to be restrained before leaving his cell, and agreed to vacate his cell if he could do so without shackles. JA27. At the time, VDOC

classified Snodgrass as a Security Level 6 ("SL6") prisoner, and per VDOC policy, SL6 inmates did not need to be restrained before leaving their cells. *See* JA379.

At that point, Gilbert approached Snodgrass's cell with Defendant Officer Brandy Lewis and several other correctional officers, and ordered Snodgrass to submit to restraints. JA27. As Snodgrass continued to state that VDOC policy did not require him to be shackled, Gilbert fired pepper spray into Snodgrass's face and eyes, "blind[ing] and choking" him. JA27. Two minutes later, Gilbert again fired pepper spray into Snodgrass's face. JA27-28, JA207. Three minutes later, Gilbert fired a third burst into Snodgrass's face. JA27-28, JA207. Throughout the entire episode, Snodgrass never left his cell, and the cell door was never open. Nothing in the record explains why Gilbert felt the need to fire the first blast of pepper spray into Snodgrass's face, leaving him temporarily blinded and choking. The record is also silent as to why Gilbert then decided to spray pepper spray into the incapacitated Snodgrass's face a second time two minutes later, or a third time three minutes after that. And there is no evidence in the record that suggests that Gilbert afforded Snodgrass an opportunity to submit to the restraint order between either

the first and second or second and third shots of pepper spray. After the third burst, Gilbert entered Snodgrass's cell, handcuffed him, and physically removed him from the cell. JA27-28.

After Gilbert restrained him, still blinded and choking from the spray, Snodgrass decontaminated in a shower. JA207, JA379. A nurse briefly assessed him and informed him that he could continue to wash his face and eyes in his cell. JA207. But Snodgrass was not allowed to return to his cell. JA379. Instead, Gilbert locked Snodgrass in a "strip cell," where corrections officers "stripped [him] down to [his] boxers and socks." JA28. Gilbert did not give Snodgrass clothing or any means of neutralizing the chemicals still burning his face and eyes. JA28. When Snodgrass asked for a shower the following day, prison officials denied his request. JA28.

Gilbert charged Snodgrass with "threatening bodily harm" against both Gilbert and Lewis based on Snodgrass's protests during the incident. JA380. Notably, "[Defendant] Warden [Earl] Barksdale dismissed th[is] threat charge" on November 9, 2015. JA381.

## B. Red Onion Officers Repeatedly Label Snodgrass a "Snitch" for Participating in a Civil Suit Against Red Onion Officers.

About a month before the pepper spray incident, in approximately August 2015, another Red Onion inmate named Donnell Blount had approached Snodgrass about a claim Blount had filed against Red Onion corrections officers. Blount asked Snodgrass to provide an affidavit for the case, and Snodgrass agreed. Blount never filed the affidavit after securing it from Snodgrass. *See generally Blount v. Adams et al.*, Case No. 7:15-cv-00439 (W.D. Va. 2015); *see also* JA35.

The pepper spray incident occurred just a month later. The day after Gilbert pepper sprayed him, as Snodgrass's eyes and face continued to burn, he asked Lewis to allow him to shower so he could thoroughly wash his face and eyes. JA28. But Lewis refused. "[A]fter the bull---t you pulled yesterday," Lewis told Snodgrass, "you're not going anywhere[.]" JA28. And Lewis made sure that Snodgrass got the point: "[I]f you come out that cell in restraints—I'm going to ram something much more up your ass than what [Officer] Messer was going to [do]." JA28. Snodgrass told Lewis he planned to file a grievance. JA28. Lewis replied, "I've already heard about you filing affidavits for [inmate] Donnell Blount

on me . . . . [Y]ou're a f---in SNITCH." JA28. Unsurprisingly, nobody at Red Onion afforded Snodgrass an opportunity to speak to a supervisor about the interaction. JA28.

Approximately six weeks later, on or about November 11, 2015, ROSP Lieutenant Garry Adams approached Snodgrass's cell and asked if he still planned to testify on behalf of inmate Donnell Blount. JA35. On November 19, 2015, Snodgrass testified against Adams, Lewis, Unit Manager Tori Raiford, and additional correctional officers on behalf of Donnell Blount in *Blount v. Adams et al.*, Case No. 7:15-cv-00439. JA35. Multiple Red Onion correctional officers observed his testimony. JA35.

The following day, Adams again approached Snodgrass's cell. JA35. Adams banged on the cell door and threatened Snodgrass with extended time in solitary confinement as a result of Snodgrass's testimony. JA35. Less than a week later, Adams approached Snodgrass in his housing unit's common area and yelled that Snodgrass was a "F---in SNITCH" for providing testimony in Blount's civil suit. JA35, JA258. Multiple inmates witnessed the interaction and—taking their cues from Adams—"chanted" that Snodgrass was a snitch. JA273.

**C.  Red Onion Officers Delay Snodgrass's Progress Through the Step-Down Program.**

On October 6, 2015, Snodgrass received an interim Institutional Classification Authority ("ICA") review to assess whether his security level should be changed after the pepper-spray incident on September 21. JA424.  The ICA proceeding recommended that Snodgrass be demoted to security level "Segregation," or "SLS," due to a number of offenses he had been charged with since March 2015.  JA424.  The ICA confirmed Snodgrass's return to SLS status on October 26, 2015.  JA470.

This decision was the result of several procedural failures.  First, Raiford misrepresented the number of infractions Snodgrass had been charged with—she reported that he had received thirteen disciplinary charges when he had received only eleven.  JA470.  Snodgrass protested the ICA's reliance on inaccurate information, but was ignored.  JA470.  Second, the ICA changed his security status without review by either the ROSP Warden or the VDOC regional administrator, in violation of VDOC policy.  JA426.  And third, the charge that prompted the ICA processing to begin with—a charge for "threatening bodily harm" against Defendant Gilbert—was subsequently dismissed.  JA470.  Regardless, Snodgrass

was officially moved to long-term segregation (SM-0) on October 26, 2015. JA470.

Under VDOC policy, in order to be removed from segregation, inmates participate in the "Segregation Reduction Step-Down Program," which involves completing a series of workbooks called the "Challenge Series," participating in self-improvement and education classes, remaining free of disciplinary infractions, and exhibiting responsible behavior. JA436. As an inmate progresses, he "steps down" through different privilege levels. JA459. For example, at privilege level SM-0, the most restrictive level, inmates are prohibited from holding a job, accessing a radio in their cells, and purchasing food items at the commissary. As they "step down" through the program, they access more privileges like an in-pod job (attained at SM-1) or video visitation (attained at SM-2). JA456. Under the policy, an inmate should spend approximately 90 days at each privilege level. JA460.

From at least October 26 until December 2, 2015, Snodgrass repeatedly requested access to the "Challenge Series" books necessary to participate in the Step Down program, starting with the progression from SM-0 to SM-1. JA472. In order to "step down" to privilege level SM-1,

Snodgrass needed to complete the first two Challenge Series workbooks. But Defendants simply refused to give him the books. JA472. At the same time, Defendants told Snodgrass that he wasn't being sufficiently "respect[ful]" because he continued to write grievances. JA475. If he kept it up, Defendants assured Snodgrass, he would "never . . . make it out of segregation." JA476. Snodgrass did not receive the workbooks until December 2, 2015. JA472.

On November 20, 2015, when Adams visited Snodgrass in his cell and called him a "SNITCH," he also said, "You f--ked up now. You told me you weren't going to testify." JA471. He told Snodgrass that his "time in segregation will be hard." JA471. A few days later, Warden Barksdale told Snodgrass's mother that if Snodgrass wanted to escape segregation, he should stop "fighting other people's battles." JA488.

On December 2, 2015, Snodgrass received an ICA hearing to determine whether the deficiencies in his initial hearing necessitated reclassification of his security status. JA484. But the second hearing was just as procedurally deficient as the first, and unsurprisingly, ROSP officers recommended that Snodgrass remain in segregation. JA385. Snodgrass appealed this determination, and the Regional Administrator ruled that

Snodgrass's grievance against the December 2 hearing was "Founded" and ordered that Snodgrass be granted a new hearing. JA473. But Red Onion officials dragged their feet, refused to afford Snodgrass a new hearing until March 17, 2016, and kept Snodgrass in segregation for the entire intervening time period. JA473.

On January 29, 2016, when Snodgrass had an ICA housing review, Gilbert recommended he remain at SM-0. JA473. Snodgrass subsequently completed the first two books of the Challenge Series and advanced to SM-1 on March 2, 2016—more than four months after his initial transfer. JA473.

After achieving SM-1, Snodgrass needed to complete additional workbooks and attend classes to achieve SM-2. But the same pattern recurred—Defendants denied Snodgrass access to these classes, just as they had with the challenge books. JA472-473. At his 90-day ICA reviews during this period, the only rationale Defendants offered for keeping Snodgrass at SM-1 status was that Snodgrass had "not met all the requirements of the step down program" without any further explanation. JA474. When Snodgrass filed grievances seeking clarification, Defendants claimed that Snodgrass failed to show sufficient "respect," and

stated that this was the reason they did not allow him to attend the required classes. JA474. In September 2016, Snodgrass was finally granted SM-2 status, more than ten months after Gilbert first relegated him to solitary confinement. JA614.

## II. Procedural History

On March 2, 2016, Snodgrass filed a complaint in federal district court alleging several civil rights violations including conspiracy, retaliation, unconstitutional living conditions, sexual harassment, due process violations, and several state law claims against ROSP prison officials. JA23-46. Defendants filed an answer on June 17, 2016, JA51-57, and a Motion for Summary Judgment on qualified immunity grounds on July 13, 2016. JA78-79. On July 18, 2016, Snodgrass filed a proposed supplemental complaint. JA232-244. The supplemental complaint—which alleged further incidents in which Defendants degraded Snodgrass and threatened to retaliate against him—involved the same sequence of events and patterns of harassment that Snodgrass described in the first complaint. Gilbert's conduct makes that abundantly clear. For example, when Snodgrass told Gilbert that Snodgrass was going to supplement his complaint because Gilbert was continuing to harass him, JA235, Gilbert

replied: "You're just a Dumb N----r who thinks he's a F---ing Lawyer! You'll be back [in segregation] as long as we want you to be!" JA235. But on October 27, 2016, the district court denied Snodgrass's request to supplement the complaint, holding that Snodgrass's claims of continued retaliation "d[id] not arise from the same sequence of events as those raised in the original complaint." JA371-372, JA414.

On March 17, 2017, the district court issued an order granting summary judgment on all of Snodgrass's claims but one. JA414-415. As relevant to this appeal, the district court granted summary judgment for Defendants on Snodgrass's Eighth Amendment claim for excessive force based on Gilbert's multiple uses of pepper spray ("excessive force claim") and his claim that Defendants retaliated against him for availing himself of the legal process by publicly calling him a "snitch" on several occasions ("snitch retaliation claim"). JA414-415. Paradoxically, in its discussion of the snitch retaliation claim, the district court included "Lewis call[ing] Snodgrass a 'snitch' for giving Blount an affidavit" and "Adams again call[ing] Snodgrass a 'snitch'" as allegations that "***support[ed Snodgrass's] claim that [D]efendants retaliated against him.***" JA409.

Despite this "support[]", the district court granted summary judgment on this claim without explanation.

The court also granted summary judgment for Defendants on Snodgrass's claim that Defendants Gilbert, Gallihar, and Stewart retaliated against him for filing informal complaints and grievances by delaying his progression through the Step-Down Program ("Step Down retaliation claim"), finding that filing informal grievances is not an exercise of a constitutionally protected right. JA407.

The district court denied Defendants' motion for summary judgment on part of Snodgrass's Step Down retaliation claim pertaining to his participation in civil suits, and referred it to the Magistrate Judge for trial proceedings. JA414-415.

The Magistrate Judge held trial proceedings on August 23 and 24, 2017. *See* JA591. During the proceedings, the Magistrate Judge precluded Snodgrass from introducing evidence related to Defendants Adams and Lewis labeling him a "snitch." JA511. On December 19, 2017, the Magistrate Judge issued a Report and Recommendation ("R&R"), in which she recommended that the district court enter judgment in Defendants' favor. JA467-468. Over Snodgrass's objections filed on

January 5, 2018, JA592, the district court adopted the R&R wholesale and entered judgment for Defendants on Snodgrass's Step-Down retaliation claim on April 26, 2018. JA591-597.

In the same order, the district court also vacated its previous grant of summary judgment on Snodgrass's Step-Down retaliation claim with regard to his filing of informal grievances in light of the Fourth Circuit's decision in *Booker v. South Carolina Department of Corrections*, 855 F.3d 533 (4th Cir. 2017) ("*Booker II*"). *Booker II* held that when an inmate files a grievance under the prison's grievance procedure, he is exercising his First Amendment right to petition. *Id.* at 544. In light of that decision, the district court vacated that portion of its summary judgment order and referred the matter to the Magistrate Judge. JA596.

On July 17, 2018, the Magistrate Judge presided over a second bench trial on Snodgrass's claim that Defendants retaliated against him for filing grievances by delaying his progress through the Step-Down program. JA600. The court issued a second R&R on October 26, 2018, again recommending the district court enter judgment for Defendants. JA616. Snodgrass objected to the Magistrate Judge's R&R on November 13, 2018. JA620. On December 17, 2018, the district court overruled

Snodgrass's objections, adopted the Magistrate Judge's recommendations in their entirety, and granted judgment in Defendants' favor. JA622.

Snodgrass timely filed a notice of appeal on December 28, 2018. JA624. The parties briefed the appeal and this Court scheduled argument for October 29, 2020. On October 23, 2020, the Court removed the case from the argument calendar and remanded it to the district court to determine whether, in light of this Court's decision in *Martin v. Duffy*, 977 F.3d 294 (4th Cir. 2020) (*Martin II*), the district court applied the correct legal standard in concluding that the officers did not retaliate against Snodgrass on the Step-Down retaliation claims. JA627.

The parties consented to a Magistrate Judge for all proceedings on remand, and the district court referred the matter to the Magistrate Judge for reconsideration on May 28, 2021. Nearly two years later, on March 26, 2024, the court issued an opinion in favor of Defendants, find that Snodgrass did not make out a prima facie case for retaliation under the standard articulated in *Martin II*. JA693.

Snodgrass timely filed his notice of  appeal on April 25, 2024. JA743.

## SUMMARY OF ARGUMENT

The district court made a number of errors with regard to Snodgrass's claims against Defendants for retaliating against him for accessing the courts, using excessive force against him in violation of the Eighth Amendment, and for extending his time in solitary confinement. It also improperly prohibited him from supplementing his complaint.

*First*, the district court improperly granted summary judgment for Defendants on Snodgrass's claim that Defendants labeled him a "snitch" for testifying on behalf of another inmate. Incarcerated individuals are entitled to engage in protected First Amendment conduct—including participation in civil suits—without fear of retaliation by public officials. But in the days after Snodgrass provided testimony in a another inmate's lawsuit against Red Onion officials, corrections officers publicly labelled Snodgrass a "snitch." They did so openly at Snodgrass's cell door—in close proximity to other inmates' cells. And they did so repeatedly—after Snodgrass provided testimony against multiple prison officials, including Adams and Lewis, Adams publicly announced that Snodgrass was a "f--- in snitch," prompting other inmates to begin chanting that Snodgrass was a snitch. Several Courts of Appeals, including this one, have

recognized the dangers of labeling an inmate a "snitch." The district court seemingly agreed, expressly citing Defendants' open labeling of Snodgrass as a snitch as "supporting" his claim for retaliation under the First Amendment. Yet the district court then granted summary judgment for Defendants without any explanation for doing so. This conclusion goes against the district court's own findings, and cannot be reconciled with the precedents of this and ten other federal circuits.

*Second*, this Court should reverse the district court's grant of summary judgment on Snodgrass's claim of excessive force. The Eighth Amendment prohibits prison guards from applying force for the very purpose of causing harm. This includes the use of pepper spray in quantities greater than necessary, which this Court has expressly held constitutes an actionable Eighth Amendment claim. *See, e.g.*, *Boone v. Stallings*, 583 F. App'x 174, 177 (4th Cir. 2014). It is undisputed that when Gilbert fired pepper spray three times into Snodgrass's face, Snodgrass was alone in his cell behind a locked door. Furthermore, the temporal proximity between the macing incident and Snodgrass's testimony on behalf of another inmate strongly suggest that Gilbert had reason to cause Snodgrass harm. For his part, Snodgrass denied threatening Gilbert, an allegation

that the district court was required to accept as true for purposes of summary judgment, but did not. The district court also did not explain how Snodgrass posed a threat to Gilbert when a locked cell door separated them. Snodgrass alleged that the first shot left him blinded and choking, and that the second and third shots completely incapacitated him. A reasonable trier of fact crediting Snodgrass's testimony could find that the use of force was motivated by an intent to cause harm rather than restrain.

There is no evidence in the record suggesting these shots were necessary, particularly the second and third shots. Even if some force was legally justified—which a factfinder was required to decide—degree matters. Here, Gilbert's force was disproportionate to any conceivable need. The district court held otherwise after impermissibly crediting Defendants' defenses even though the facts should have been viewed in the light most favorable to Snodgrass. The district court also erred by misapplying the appropriate factors regarding excessive force that are settled law in this Circuit, by wholly neglecting the critical lack of justification for the repeated uses of force on Snodgrass. This Court should therefore reverse.

*Third*, the district court improperly denied Snodgrass's timely request to supplement his complaint, overlooking this Court's guidance that requests to amend "should be freely granted" and "allowed as of course." *See Franks v. Ross*, 313 F.3d 184, 198 n.15 (4th Cir. 2002); *see also New Amsterdam Cas. Co. v. Waller*, 323 F.2d 20, 28-29 (4th Cir. 1963) (supplemental pleadings "ought to be allowed as of course, unless some particular reason for disallowing them appears"). And the court did not identify any prejudice to Defendants as the basis for that decision, but instead reasoned that the allegations did not stem from the "same sequence of events" and, therefore, expanded the lawsuit. But the applicable procedural rule specifically contemplates that amended pleadings will expand the scope of the allegations. The district court abused its discretion by denying Snodgrass's request.

*Fourth*, on remand for reconsideration from the Fourth Circuit in light of this Court's adoption of the *Mt. Healthy* burden-shifting framework in *Martin II*, the district court made both factual and legal errors in its determination that Snodgrass failed to make out *prima facie* case for retaliation concerning his delayed progression through the Step Down program. Contradicting its own finding that Snodgrass was in fact

delayed in segregation, the court still determined than nearly an extra month in solitary confinement did not constitute an adverse action that would deter an inmate from exercising his First Amendment rights.

## ARGUMENT

### I. The District Court Erred in Granting Summary Judgment on Snodgrass's "Snitch" Retaliation Claim.

This Court has long understood that retaliation poses a serious threat to protected First Amendment conduct. *ACLU of Md., Inc. v. Wicomico Cnty.*, 999 F.2d 780, 785 (4th Cir. 1993). And an inmate's ability to access the courts is precisely the type of conduct that the First Amendment protects. *Cf. Lewis v. Casey*, 518 U.S. 343, 346 (1996). The law in this Circuit is unequivocal: "[T]his Court has long held that prison officials may not retaliate against prisoners ***for exercising their right to access the courts***." *Booker II*, 855 F.3d at 544 (emphasis added) (citing *Hudspeth v. Figgins*, 584 F.2d 1345, 1348 (4th Cir. 1978). By publicly labelling Snodgrass a "snitch" for testifying in another inmates' civil suit—a label that comes with grave safety risks—Defendants did just that. The district court erred in granting summary judgment in their favor.

## A. Legal Standard

This Court reviews *de novo* a district court's grant of summary judgment, and must view all facts and reasonable inferences in the light most favorable to the nonmovant. *United States v. Ancient Coin Collectors Guild*, 899 F.3d 295, 312 (4th Cir. 2018). On appeal from an order granting summary judgment, this Court considers all evidence before it, including the verified complaints of *pro se* prisoners. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Because Defendants moved for summary judgment on grounds of qualified immunity, once a constitutional violation has been established, the Court must also assess whether Snodgrass's right to be free from retaliation for participating in protected First Amendment conduct was "'clearly established' at the time of [D]efendants' alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009) (quotation omitted).

## B. Snodgrass Alleged A Violation Of The Clearly Established Right To Be Free From Retaliation For Participating In Protected First Amendment Conduct.

Snodgrass has satisfied this Circuit's three required elements to make out a First Amendment retaliation claim pursuant to 42 U.S.C.

§ 1983: (1) he engaged in protected First Amendment activity; (2) Defendants took some action that adversely affected his First Amendment rights; and (3) there was a causal relationship between his protected activity and Defendants' alleged retaliation. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005); *Martin v. Duffy*, 858 F.3d, 239, 249 (4th Cir. 2017) ("*Martin I*").

### 1.    Protected First Amendment Activity

The First Amendment protects a prisoner's right to participate in civil litigation. *See Lewis*, 518 U.S. at 346. For the purposes of a retaliation claim, a prisoner satisfies the First Amendment conduct prong when he exercises his right to participate in § 1983 litigation. *See id.*; *Booker II*, 855 F.3d at 544. Snodgrass satisfied this requirement by providing a sworn affidavit in a pending § 1983 suit. JA409-410; *Lewis*, 518 U.S. at 346.

### 2.    Adverse Action

Defendants took an adverse action by publicly calling Snodgrass a "snitch" within clear earshot of other inmates. An action is sufficiently "adverse" if it resulted in something more than a "de minimis inconvenience" to a plaintiff's exercise of First Amendment rights. *ACLU of Md.*, 999 F.2d at 786 n.6. *Constantine* makes clear that a plaintiff need not

show that the retaliation resulted in an *actual* deprivation of the plaintiff's First Amendment rights, *i.e.*, the retaliation does not need to have *actually* chilled a plaintiff's exercise of his First Amendment rights. *Constantine*, 411 F.3d at 500. Rather, *Constantine* held that an official's conduct is an "adverse action" if it would "deter a person of ordinary firmness from the exercise of First Amendment rights." *Id.* (quotations omitted). And in *Booker I*, this Court clarified that, in the context of retaliation against inmates, the relevant question is whether a defendant's conduct would "likely deter ***prisoners*** of ordinary firmness from exercising their First Amendment rights." *Booker v. S.C. Dep't of Corr.*, 583 F. App'x 43, 44 (4th Cir. 2014) ("*Booker I*") (per curiam) (emphasis added).

Publicly labeling a prisoner a snitch for participating in litigation— precisely the conduct that Snodgrass alleged—would certainly deter a prisoner of ordinary firmness from participating in lawsuits. *See Constantine*, 411 F.3d at 500; *see also Booker I*, 583 F. App'x at 44. Numerous Courts of Appeals have held accordingly. At least three have explicitly held that labeling an inmate a "snitch" can give rise to a viable claim of retaliation. *Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989); *Jackson v. Peterson*, 100 F.3d 956 (Table), at *2 (6th Cir. 1996)

(holding that plaintiff could state a First Amendment retaliation claim if guards revealed he was a "snitch" to others); *Streckenbach v. Meisner*, 768 F. App'x 565, 569 (7th Cir. 2019) ("[W]e think that a reasonable juror could infer that being labeled a snitch would likely deter a person of 'ordinary firmness' from exercising his First Amendment rights."); *see also Rivera v. Marcoantonio*, 153 F. App'x 857, 859-60 (3d Cir. 2005) (noting that describing a prisoner as a snitch to place the prisoner at risk of physical harm was an "adverse action"). And no less than ten Courts of Appeals—including this Court—have recognized that being labeled a "snitch" places a prisoner at risk of physical assault and even death.[1]

---

[1] In addition to this Court, the Second, Third, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits have all so held. *See Miller*, 913 F.2d at 1088, n.* (4th Cir. 1990) (citing *Harmon v. Berry*, 728 F.2d 1407, 1409 (11th Cir. 1984)); *Burns v. Martuscello*, 890 F.3d 77, 91 (2d Cir. 2018) (recognizing that being known as a snitch "may well prompt life-threatening physical harm"); *Rivera v. Marcoantonio*, 153 F. App'x 857 (3d Cir. 2005); *Gullatte v. Potts*, 654 F.2d 1007, 1013 (5th Cir. 1981) (remanding Eighth Amendment snitch claim to determine whether defendant knew or should have known danger associated with snitch label and whether defendant took reasonable steps to protect inmate from that danger); *Jackson v. Peterson*, 100 F.3d 956 (Table), at *2 (6th Cir. 1996) (holding that plaintiff could state a First Amendment retaliation claim if guards revealed he was a "snitch" to others); *Irving v. Dormire*, 519 F.3d 441, 450-51 (8th Cir. 2008); *Reece v. Groose*, 60 F.3d 487, 488 (8th Cir. 1995) (recognizing that reputation as a snitch places inmate "at substantial risk of injury at [other inmates'] hands"); *Valandingham*, 866 F.2d at 1138-39 (reversing grant of summary judgment for defendants where inmate produced evidence tending to show prison officials called him a snitch in order to subject him to life-threatening retaliation by other inmates); *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001); *Harmon*, 728 F.2d at 1409 (per curiam) (holding that claim that prison officials labeled inmate a snitch, thereby exposing him to inmate retaliation, could not be dismissed before service).

*Miller v. Leathers*, 913 F.2d 1085, 1088 n.* (4th Cir. 1990) ("It is **impossible to minimize the possible consequences** to a prisoner of being labelled a 'snitch.'"). Indeed, the district court itself acknowledged that labeling a prisoner a "snitch" is a "retaliatory action[]." JA409.

### 3. Causal Connection

The district court acknowledged the causal connection between Snodgrass's participation in civil litigation and Adams and Lewis labeling him a snitch, which should have been the end of the inquiry. JA409-410.

At summary judgment, courts use the burden-shifting framework set out in *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977), and adopted by this Court in *Martin II*, to assess retaliation claims. *Martin II*, 977 F.3d at 297. Under *Mt. Healthy*, a plaintiff satisfies the causal connection element by showing that the protected First Amendment conduct is a "substantial or motivating factor." *Id.* at 300. At that point, the burden shifts to the defendant to demonstrate that they would have reached the same decision "in the absence of the protected conduct." *Id.* at 299.

The district court's opinion on this question antedated *Martin II*, so it proceeded under a different summary-judgment standard—it required Snodgrass to show that *but for* the First Amendment conduct, the defendant would not have retaliated. *Huang v. Bd. of Governors of Univ. of N.C.*, 902 F.2d 1134, 1140 (4th Cir. 1990), *as amended* May 8, 1990. Either way, Snodgrass satisfied his burden.

Snodgrass demonstrated that his protected First Amendment conduct was a "substantial or motivating factor" in Defendants' adverse conduct. *Mt. Healthy*, 429 U.S. at 287. He established that defendants knew about the protected First Amendment activity and that there was "some degree of temporal proximity to suggest a causal connection." *Shaw v. Foreman*, 59 F.4th 121, 130-31 (4th Cir. 2023) (quoting *Constantine*, 411 F.3d at 501). His complaint alleges not only a close temporal proximity between his First Amendment conduct and the alleged retaliation, JA28, JA35; *Tobey v. Jones*, 706 F.3d 379, 390-91 (4th Cir. 2013), but that Lewis's ***own statement*** links the conduct and retaliation. Shortly after Snodgrass provided affidavits to a fellow inmate, Lewis called him a "F---IN snitch" for "filing affidavits for Donnell Blount against [Lewis]." JA28. Similarly, the complaint alleges that less than a week after

Snodgrass testified in Blount's suit, Adams threatened him and called him a "F---IN snitch." JA35. It is difficult to conceive of a statement that would better demonstrate that First Amendment activity was a "substantial and motivating factor" in retaliatory conduct than one that explicitly says so. And Defendants have done nothing to demonstrate that, absent Snodgrass's First Amendment conduct, that they would have made the "same decision" to publicly call him a snitch and put his safety at risk, nor that there would be any valid reason to do so.

And even under the pre-*Martin II* "but for" causation analysis, Snodgrass's well-pleaded allegations satisfy it. Snodgrass alleges that Lewis admitted that she was retaliating against Snodgrass for participating in civil litigation. JA28. Adams allegedly made threats in which he referred Snodgrass's testimony. JA35. Because these allegations must be viewed in the light most favorable to Snodgrass, he has therefore connected the retaliation to the First Amendment activity and plainly satisfied the "causal connection" requirement.

### C. Defendants Gilbert and Adams Are Not Entitled To Qualified Immunity.

The district court also erred when it held that Defendants were entitled to qualified immunity for their actions. Qualified immunity shields

officers if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson*, 555 U.S. at 231. Here, the district court considered only the first prong of the qualified immunity analysis: "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right." JA391; *see Pearson*, 555 U.S. at 236. As discussed above, the district court erroneously concluded that labeling Snodgrass a "snitch" was not actionable as a First Amendment retaliation claim. JA410. Because it believed Snodgrass had not alleged a violation of a constitutional right, the district court never considered "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *See* JA391; *see also Pearson*, 555 U.S. at 236.

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (alterations omitted) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). There is no requirement of "a case directly on point." *al-Kidd*, 563 U.S. at 741. In this Circuit, the right to be free from

retaliation has been clearly established for at least twenty years. *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685-86 (4th Cir. 2000) (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 574 (1968)). That right necessarily precludes government officers from exposing individuals to a risk of death and physical injury in response to protected First Amendment conduct. *Constantine*, 411 F.3d at 500.

In 2015, at the time they retaliated against Snodgrass, Gilbert and Adams had ample notice that their conduct transgressed constitutional bounds. At the time, this Court—along with no fewer than eight circuits—recognized that calling an inmate a "snitch" exposed a prisoner to serious harm. *See supra* at n.3. At least three circuits explicitly held that calling an inmate a "snitch" can give rise to a First Amendment retaliation claim.[2] *Valandingham*, 866 F.2d at 1138-39; *Jackson*, 100 F.3d at *2; *Williams v. Horner*, 403 F. App'x 138, 140-41 (8th Cir. 2010). True,

---

[2] A previous lawsuit that Snodgrass filed presented this Court with the opportunity to decide whether being called a "snitch" was an adverse action under the First Amendment. *See Snodgrass v. Messer*, 694 F. App'x 157 (4th Cir. 2017) (per curiam). In that case, the basis of the underlying First Amendment conduct was the filing of prison grievances. The lawsuit predated this Court's decision in *Booker II*, and the district court's decision in that case is no longer good law. *See Snodgrass v. Messer*, No. 7:16CV00050, 2017 WL 975992, at *4 (W.D. Va. Mar. 10, 2017) (holding prisoners do not have a constitutional right to file prison grievances). Unlike here, the case did not concern Snodgrass's right to participate in civil litigation, and Snodgrass did not have counsel. This Court opted to summarily affirm without full briefing and did not definitively resolve the First Amendment issue. *Snodgrass*, 694 F. App'x at 158.

qualified immunity can serve as a broad defense to liability. But it is not absolute. Defendants cannot evade liability simply because this Court had not yet explicitly stated what was already clear. *See al-Kidd*, 563 U.S. at 741.

This Court had already answered every relevant component of the retaliation analysis in 2015. Precedent from this Circuit that predates 2015 put Defendants on notice that they could not take actions that would deter the exercise of First Amendment rights. *Constantine*, 411 F.3d at 499. That included prisoners who sought to access courts. *Hudspeth*, 584 F.2d at 1348. *Cf. Booker II*, 855 F.3d at 544. Precedent also put Defendants on notice that calling a prisoner a snitch creates a substantial risk of grievous harm. *E.g.*, *Miller*, 913 F.2d at 1088 n* (citing *Harmon*, 728 F.2d at 1409.

Each of these principles was already settled in 2015. Snodgrass's claims do not fail simply because this Court had not explicitly put those two holdings together. *See al-Kidd*, 563 U.S. at 741. Qualified immunity affords officers leeway to operate when the law is unsettled. *See id.* It does not protect officers who fail to connect obvious dots. *See id.*

Snodgrass's rights in this case were clearly established because both the freedom from retaliation and the adverse consequences of calling him a snitch were open and obvious at the time Defendants acted. Because Adams and Gilbert were not entitled to qualified immunity, the district court erred in granting summary judgment on that basis, and this Court should reverse and remand for trial on this issue.

## II. The District Court Erred in Granting Summary Judgment on Snodgrass's Excessive Force Claim.

The district court erroneously granted summary judgment to Defendants on Snodgrass's excessive force claim. The court both improperly accepted Defendants' version of disputed events and misapplied the relevant considerations for excessive force analysis. This is reversible error.

### A. Legal Standard

The Eighth Amendment protects inmates from inhumane treatment at the hands of correctional officers. *See Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008); *Thompson v. Virginia*, 878 F.3d 89, 102 (4th Cir. 2017). While courts defer to prison officials to execute policies essential to preserving order and security, that "does not insulate from review actions taken in bad faith and for no legitimate purpose." *Whitley v. Albers*, 475 U.S. 312, 322 (1986) (quotation omitted). To the contrary, this Court

has held that a prison guard's use of force—including use of pepper spray—"in quantities greater than necessary" gives rise to an Eighth Amendment claim of excessive force. *See, e.g.*, *Boone*, 583 F. App'x at 177; *Dean v. Jones*, 984 F.3d 295, 303 (4th Cir. 2021) ("[W]e have no difficulty concluding—as we have before—that a reasonable jury could find that a sustained blast of pepper spray directly to the face constitutes something more than de minimis force.").

Courts evaluating such claims ask whether the force "was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). This two-part inquiry involves an "objective" and "subjective" inquiry. First, the objective component requires a guard's use of force be sufficiently serious, and is satisfied if the force is "nontrivial." *Id.* at 39. Second, the subjective component requires the official to have acted with "a sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Summary judgment is inappropriate only if the evidence, viewed in the light most favorable to the plaintiff, presents an issue of material fact on each prong. *See Whitley*, 475 U.S. at 322.

On Snodgrass's excessive force claim, Gilbert conceded that his repeated use of pepper spray (sometimes called OC (oleoresin capsicum) spray) satisfied the objective component, *see* JA98-100, and the district court acknowledged that Snodgrass had "satisfied the objective facet of the excessive force standard." JA393. The question here is therefore a narrow one: whether the facts as viewed in the light most favorable to Snodgrass satisfy the subjective element of an Eighth Amendment claim. They do.

### B. Contrary to the District Court's Decision, Snodgrass Raised Issues of Material Fact on the Subjective Component of His Eighth Amendment Claim Such That Defendants Were Not Entitled to Judgment as a Matter of Law

To satisfy the subjective component of the excessive force analysis, Snodgrass must show that Gilbert acted with "a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298. This prong is met where the defendant engaged in a wanton infliction of pain, *Iko*, 535 F.3d at 239, or applied force "for the very purpose of causing harm," *Whitley*, 475 U.S. at 320-21 (quotation omitted). He has done so.

The subjective component can be satisfied with circumstantial evidence, inferred from non-exhaustive factors that derive from *Whitley v.*

34

*Albers*, 475 U.S. 312 (1986) (the "*Whitley* factors"): (1) the need for force; (2) the relationship between the need and the amount of force used; (3) the extent of any reasonably perceived threat the force was intended to quell; and (4) any efforts made to temper the force's severity. *See Dean*, 984 F.3d at 302 (citing *Iko*, 535 F.3d at 239). "[C]orrections officers cross the line . . . when they inflict pain not to induce compliance, but to punish an inmate for intransigence or to retaliate for insubordination . . . ." *Brooks v. Johnson*, 924 F.3d 104, 113 (4th Cir. 2019); *see Orem v. Rephann*, 523 F.3d 442, 447 (4th Cir. 2008) (holding that a guard who tased a detainee for "forcefully stat[ing] 'f--k you'" could be inferred to have done so to "harm[] and embarrass[]" the inmate and not to restore order).

The four *Whitley* factors weigh heavily in Snodgrass's favor. The lower court held otherwise because it misapplied the factors, did not consider the evidence in the light most favorable to Snodgrass, and overlooked several genuine disputes of material fact. Each of these errors, standing alone, merits reversal.

### 1.    Need for Force

According to the district court, Snodgrass's purely verbal disobedience, which occurred while he was locked in his own cell alone, justified

Gilbert's repeated application of force. The court reasoned that because Snodgrass was "noncomplian[t] with the officers' orders" to submit to "cuffing procedures," he posed a "security threat." *See* JA393. The alleged necessity of those "cuffing procedures," however, stems from Gilbert's misleading claim that inmates in "segregated housing" are "in full restraints during any movement outside their cells." *See* JA203. But at the time, Snodgrass was a Level 6 inmate, free to leave his cell without restraints. JA379, JA382-383. While not dispositive, this fact is significant because it shows that according to the prison's own classification system, Snodgrass had reason to believe that he did not need to be restrained in order to leave his cell, and that an order to do so itself represented an escalation of force.

The court elsewhere acknowledged that Snodgrass's inmate classification allowed him to move freely from his cell without restraints, and Gilbert's own affidavit confirms Snodgrass was not transferred to segregated housing until *after* the incident. JA407; *see also* JA379. Still, the court credited Gilbert's claim and held, as a matter of law, that Snodgrass had no cause for protest—even though it bore directly on the "need for force" issue. JA392-393. This was error. At summary judgment,

Snodgrass was entitled to "his version of all that is in dispute accepted," and "all internal conflicts in it resolved favorably to him." *Miller*, 913 F.2d at 1087 (quotations omitted).

Even if handcuffs or some minor application of force *was* needed, Snodgrass's strictly verbal resistance did not warrant the *repeated* application of force. *See Brooks*, 924 F.3d at 114-15 (holding that an inmate's insubordination did not justify the ***repeated*** application of force). At all times that Gilbert used force against Snodgrass, a locked cell door separated the two of them. Rather than attempt to diffuse the situation, Gilbert sprayed mace directly into Snodgrass's face until he was "blinded and choking," then pepper sprayed him in the face two more times, pausing for several minutes in between each blast, until he was incapacitated on the ground. JA27-28. Gilbert, who provided a written account of the incident after it occurred and also submitted an affidavit in support of Defendants' motion for summary judgment, has never suggested he warned Snodgrass before discharging the first blast of pepper or any subsequent sprays, nor has he ever offered an explanation for why the second or third blasts were necessary. *See* JA202-204. He also never indicated whether or not he gave Snodgrass the opportunity to comply with the

order in between sprays. *See* JA202-204. The necessity of Gilbert's force was therefore in dispute and could not be resolved on summary judgment. *See Brooks*, 924 F.3d at 116 ("[T]he proper inferences to be drawn from these factors . . . is a matter for the jury."). By granting summary judgment, the district court denied Snodgrass the opportunity to examine Gilbert or other witnesses to the incident regarding why successive uses of force were necessary, and why Gilbert failed to explain his repeated use of force in either his report or in his affidavit. For its part, the district court did not address ***at all*** why the successive uses of force, as opposed to the initial use of force, were necessary. JA202-204. *Compare Brooks*, 924 F.3d at 114 ("We have held that even where an initial use of force does not by itself raise questions about a corrections officer's intent under *Whitley*, the continued application of force may give rise to an inference that force was used for malicious or punitive purposes.") *with* JA392-393. Instead, rather than analyzing each use of force individually, the court lumped all three uses of mace together into a single analysis. Each use of force must be considered separately, because although a past use of force may be justified, past actions do not justify continuing use. *Brooks*, 924 F.3d at 114.

## 2. Proportionality

Gilbert's use of force was not proportional to any need for force. "[I]t is a violation of the Eighth Amendment for prison officials to use mace, tear gas, or other chemical agents, in quantities greater than necessary or for the sole purpose of infliction of pain." *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996) (quotations omitted). Indeed, "even where an initial use of force does not by itself raise questions about a corrections officer's intent under *Whitley*, the continued application of force may give rise to an inference that force was used for malicious or punitive purposes." *Brooks*, 924 F.3d at 114 (citing *Iko*, 535 F.3d at 239-40).

This Court's opinion in *Brooks* is instructive. There, a prison guard deployed a taser against an "intransigen[t]" inmate three times following his noncompliance with repeated orders and threats to sue prison staff. 924 F.3d at 107-09. According to the defendants, the shocks were a "proportionate response" to the plaintiff's refusal to cooperate and necessary to "restore discipline." *Id.* at 110. But this Court found it significant that, like here, the officer pulled the trigger "not once but three times, and in quick succession." *Id.* at 114-15. Reversing the district court's grant of summary judgment, the Court held that, even if some force was justified,

"a reasonable jury could question the need for the amount of force . . . that ostensibly was used solely to induce" the plaintiff's cooperation. *See id.* at 1174 (quotation omitted).

The same is true here. While the district court acknowledged that Gilbert fired three bursts of OC spray into Snodgrass's face, not once did it question the propriety of the second or third bursts. JA392-394. It instead assumed all three were necessary. JA393-394. But the record reveals that the force applied was disproportionate to any conceivable need. While the OC spray "blinded and chok[ed]" Snodgrass, Gilbert fired a second burst. And then a third. All three hit Snodgrass squarely in his face. JA27. At summary judgment, Gilbert supplied no rationale whatsoever for firing the second or third burst. *See* JA100-101, JA203-204. Under the circumstances, including the nearly simultaneous retaliatory actions taken by Defendants against Snodgrass for providing evidence in legal proceedings against prison officials, "a reasonable jury could begin to question whether the entire series . . . in fact was intended to punish [the plaintiff], through the wanton infliction of pain, for his noncompliance . . . ." *Brooks*, 924 F.3d at 114. Gilbert should have afforded Snodgrass a chance to comply with the cuffing order after the first burst. But

the record, viewed in the light most favorable to Snodgrass, shows that Gilbert did not do so. This factor cuts strongly in Snodgrass's favor. *See, e.g.*, *id.*; *Meyers v. Balt. Cnty.*, 713 F.3d 723, 732-34 (4th Cir. 2013) (although force was justified while the individual posed a threat to the officer's safety, subsequent tasings were excessive).

### 3. Perceived Threat

Whether Snodgrass presented a perceived threat to Gilbert is a genuine issue of material fact that the district court should have viewed in the light most favorable to Snodgrass. It did not. Gilbert claims to have pepper sprayed Snodgrass because he "refused to be restrained and was responding in a threatening manner . . . ." JA203. But Snodgrass has consistently stated that Gilbert invented this accusation to justify his use of force after the fact. *See, e.g.*, JA29, JA247. And while the district court purported to "accept as true" Snodgrass's denial, *see* JA393, it simultaneously cited Gilbert's account of the incident to support the assertion that Snodgrass "does not deny" threatening Gilbert. *See* JA379. The record directly contradicts the district court's understanding of the facts. Snodgrass consistently denied that he threatened any officer, let alone Gilbert. *E.g.*, JA247. Further, Warden Earl Barksdale ***dismissed the***

*disciplinary charge* that Gilbert lodged against Snodgrass for making threatening statements during the September 21, 2015, incident. *See* JA380-381. There was therefore no basis for the district court to assert that Snodgrass "does not deny" threatening Gilbert. JA379.

After crediting Gilbert's account over Snodgrass's, the district court held, in conclusory fashion, that Snodgrass's "continued noncompliance posed a security threat." *See* JA393. But noncompliance, without more, does not satisfy this factor. *See, e.g., Iko*, 535 F.3d at 239-40 (concluding that the "perceived threat" factor supports the claimant where, despite recalcitrance, the inmate did not react violently or become confrontational).

The district court also ignored the fact that Snodgrass was locked in a cell alone during the entire incident, with a cell wall separating him from Gilbert. JA27-28. He could reach neither Gilbert nor any other person. JA27-28. The district court failed to explain how, under these circumstances, Gilbert could have legitimately perceived a threat from Snodgrass, or how Snodgrass failed to raise a triable issue on this point. This factor also supports Snodgrass's claim.

### 4. Efforts to Temper the Force's Severity

The fourth factor asks whether an officer took any steps to reduce the effect the force had on the inmate. *Dean*, 984 F.3d at 302. Gilbert failed to temper the severity of the force used in a concrete manner: he did not reassess the need for further force after each spray and attempt to avoid the second or third use of pepper spray. JA27. Indeed, in Gilbert's own affidavit, he makes no mention of any effort to avoid the second and third blasts. JA202-204. If Gilbert had taken steps between each spray to minimize the effect of the force, he presumably would have said as much in his affidavit. He did not, and this silence speaks volumes.[3]

And after repeatedly firing OC spray into Snodgrass's face, Gilbert took negligible steps to minimize the harm he inflicted. *See* JA28. After a brief shower and visit with a nurse, Gilbert ordered Snodgrass be placed in a strip cell overnight, where he had no means to wash his eyes

---

[3] Snodgrass informed the district court he required discovery to develop facts regarding his claims. JA371. Despite the existence of an open question of what transpired, the district court did not allow the development of evidence and dismissed this claim without discovery or testimony. JA371-372. Snodgrass cannot possibly know what Gilbert did between blasts of pepper spray because he was blinded and choking. JA27. The only way to know what transpired between each blast of pepper spray is to allow Snodgrass the tools necessary to develop properly the facts surrounding this claim. Importantly, the district court's decision denied Snodgrass the most effective means to develop evidence of Gilbert's failure to temper the effects between blasts of pepper spray: examination of Gilbert under oath.

or face.  JA28.  Snodgrass was even denied a shower the next day by Defendant Brandy Lewis.  JA28.  This Court in *Iko* held similar facts to demonstrate a failure on the defendant's part to temper the force's severity.  *See* 535 F.3d at 240.

The district court erroneously treated these allegations as a distinct cause of action, ignoring their implications for Snodgrass's excessive force claim.  *See* JA394.  Rather, the court concluded this factor cut against Snodgrass's claim because Gilbert first gave verbal orders for Snodgrass to submit before firing.  *See* JA393.  But a guard offering verbal commands is far from dispositive on this factor.  "[V]erbal attempts to reason with and calm an unruly detainee before resort to force ***do not preclude an inference that force was applied maliciously***, in order to punish this continued intransigence." *Brooks*, 924 F.3d at 117 (quotations omitted); *see also Orem*, 523 F.3d at 447 (an officer's "verbal attempts to secure order" do not "lessen the unreasonableness of his subsequent actions").  Gilbert's order for Snodgrass to submit does not justify his subsequent failure to take meaningful steps to temper the effects of his three sprays.  At base, the district court erred by ignoring Snodgrass's allegations and failing to appropriately evaluate Gilbert's minimal effort to

temper the force used.  This is reversible error.  *See Parker v. Stevenson*, 625 F. App'x 196, 199 (4th Cir. 2015) (citing *Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011)).

All told, Snodgrass more than carried his burden.  Even if some use of force may have been justified (which was not resolvable on summary judgment), all remaining *Whitley* factors support his claim.  Recent decisions from this Court deem summary judgment inappropriate where, as here, triable issues remain on the second, third, and fourth factors.  *See Dean*, 924 F.3d at 302-06; *Alexander v. Connor*, 105 F.4th 174, 183 (4th Cir. 2024); *Iko*, 535 F.3d at 239-40; *Brooks*, 924 F.3d at 107.

## C.  Because Snodgrass Established a Triable Eighth Amendment Claim Under Clearly Established Law, Gilbert Was Not Entitled to Qualified Immunity

The district court erroneously concluded Gilbert was entitled to qualified immunity because Snodgrass had not alleged a violation of his Eighth Amendment rights.  JA393.  The "clearly established right" element of the qualified immunity analysis (*see supra* Part I.C.) is not at issue on this claim.  The district court agreed that the use of OC spray in "quantities greater than necessary" violates "well established" law.  JA392 (citation omitted).  And this Court in *Iko* affirmed that a prisoner's

"right to be free from excessive use of pepper spray [i]s clearly established" for qualified immunity purposes. 535 F.3d at 240; *see Dean*, 984 F.3d at 311 (explaining that "*Iko* is hardly an outlier" for notice purposes). The only question, here, is whether given the alleged facts taken in the light most favorable to Snodgrass, Gilbert violated Snodgrass's Eighth Amendment rights. As demonstrated above, the answer to that question is yes. Gilbert repeatedly fired a chemical agent into an inmate's face, offering no reason for the second and third bursts administered after the inmate was blinded and choking, alone in his cell. Summary judgment was therefore not proper on this claim. *See Buonocore v. Harris*, 65 F.3d 347, 359 (4th Cir. 1995) (when resolution of both the qualified immunity question and the claim itself both depend upon determining on disputed facts, summary judgment on qualified immunity grounds is improper).

## III. The District Court Erred When It Denied Snodgrass's Request to Supplement His Complaint Because It Applied the Wrong Legal Standard

The district court improperly denied Snodgrass's request to supplement complaint because it found that the new allegations did not stem from the "same sequence of events" as the initial complaint. JA372. But this is not the correct standard for determining whether a plaintiff can

supplement his complaint.  Snodgrass should have been permitted to do so under the correct standard.

This Court reviews legal conclusions *de novo*.  *PBM Prods. LLC v. Mead Johnson & Co.*, 639 F.3d 111, 119 (4th Cir. 2011).  This Court reviews both a denial of leave to supplement a pleading for abuse of discretion and a denial of a motion for reconsideration under the same standard.  *See Rowe v. U.S. Fid. & Guar. Co.*, 421 F.2d 937, 943 (4th Cir. 1970); *United States ex rel. Carter v. Halliburton Co.*, 866 F.3d 199, 206 (4th Cir. 2017).  "A district court by definition abuses its discretion when it makes an error of law," *Koon v. United States*, 518 U.S. 81, 100 (1996).

By applying the incorrect legal standard, the district court abused its discretion when it denied Snodgrass the ability to supplement his complaint with allegations of Defendants' continued and related retaliatory conduct.  Rule 15(d) allows Snodgrass to supplement his complaint by "setting out any transaction, occurrence, or event that happened after the date of the [complaint] . . . ."  Fed. R. Civ. P. 15(d).  Motions to supplement, this Court has recognized, "should be freely granted, and should be denied only where good reason exists, such as prejudice to the defendants."  *Franks*, 313 F.3d at 198 n.15  (alterations and citations omitted);

*see also New Amsterdam Cas. Co.*, 323 F.2d at 28-29 (supplemental pleadings "ought to be allowed as of course, unless some particular reason for disallowing them appears"). Rule 15(d) allows for both new allegations and new causes of actions against existing parties, so long as "***some relation***" exists between the original action and the supplemental facts. *See Keith v. Volpe*, 858 F.2d 467, 474 (9th Cir. 1988) (quoting 3 James Wm. Moore, *Moore's Federal Practice* ¶ 15.16 (3d ed. 1985)).

The standard is not—as the magistrate judge determined—whether the new allegations stem from the "same sequence of events." JA372; *see Keith*, 858 F.2d at 474 (explaining that Rule 15(d) imposes no requirement that the supplemental allegations "arise out of the same transaction or occurrence" or involve "common questions of law and facts"). Nor does Rule 15(d) disallow plaintiffs from expanding their lawsuits, as the district court held. *See* JA388. The Rule's plain language permits plaintiffs to plead new facts that occurred after the original filing date; it plainly contemplates such expansion. Given this liberal policy, the district court made an error of law—and consequently, abused its discretion—when it denied Snodgrass leave to file a supplemental complaint when the matters pleaded therein "bore a direct relation to the claim

asserted in the original complaint." *Rowe*, 421 F.2d at 944; *Koon*, 518 U.S. at 100.

From the beginning, Snodgrass has alleged the Defendants held him in solitary confinement in retaliation for exercising his First Amendment rights to file grievances and petition the courts. *See generally* JA27-45. The supplemental complaint bore directly on these claims. There, he asserted the same Defendant Gilbert at issue in many of his key allegations, including those at issue in this appeal, *admitted* to retaliating against Snodgrass for accessing the courts, mocked him for asserting his rights, and called him a profoundly offensive racial slur. *See* JA235 ("You're just a Dumb N----r who thinks he's a F---ing Lawyer").

The court's decision to deny Snodgrass's request to supplement his complaint severely prejudiced him at trial. It deprived Snodgrass of key facts supporting his retaliation claim and prevented the factfinder from fully evaluating them. While Snodgrass could file a new suit—pleading the same claim involving the same facts against the same parties—estoppel principles would again bar the court from seeing the entire picture. Even were that not the case, judicial economy militates against such repetitive, piecemeal litigation. By overlooking this consideration, the

court undermined Rule 15(d). *See LaSalvia v. United Dairymen of Ariz.*, 804 F.2d 1113, 1119 (9th Cir. 1986) ("The purpose of Rule 15(d) is to promote as complete an adjudication of the dispute between the parties as is possible.") (alterations and quotation omitted).

Snodgrass's supplemental complaint also posed no risk of prejudice to the Defendants. The new allegations were against the same core Defendants and involved the same core conduct. *Compare* JA40-43 *with* JA242-243. Nor was delay a concern. Snodgrass filed his supplemental pleading less than two weeks after the new incidents occurred. *See* JA232. Nor could the developments have complicated trial preparations. At the time, the district court had not yet set a trial date. The only party to suffer any prejudice here was Snodgrass. Accordingly, this Court should vacate the entry of judgment for Defendants on Snodgrass's First Amendment retaliation claim and remand for a new trial.

## IV. The District Court Committed A Reversible Error When It Entered Judgment For Defendants On Snodgrass's Step-Down Retaliation Claim

The district court erred when it found that Snodgrass's failed to establish a claim for retaliation based on Defendants' steps to extend his

time in segregation by delaying his progress through the Step Down program.

**A.    The District Court Erred In Concluding That Snodgrass Had Not Established A *Prima Facie* Case For Retaliation Regarding Delays From Levels SM-0 To SM-1**

This Court reviews legal conclusions *de novo*.  *PBM Prods.*, 639 F.3d at 119.  A district court's conclusions of fact are reviewed for an abuse of discretion.  Fed. R. Civ. P. 52.  Contrary to the district court's finding, Snodgrass satisfied each all of the elements of his First Amendment retaliation claim (*see supra* Part I.B.) with regard to his delayed progression through the Step Down Program.

It is undisputed that Snodgrass engaged in protected conduct by participating in civil suits against ROSP officers and by filing administrative complaints with prison officials throughout his time in segregation.  JA730.  Snodgrass further demonstrated that ROSP officials took action that would deter a person of ordinary firmness from exercising his First Amendment rights—i.e., an adverse action—by hindering his ability to perform the necessary tasks to progress through the Step-Down Program and unjustifiably extending his time in restrictive housing units.  This Court has made clear that placing an inmate in segregation

satisfies the second element of a retaliation claim. JA731; *see Martin I*, 858 F.3d at 250. This reasoning applies in full to unjustifiably *retaining* an inmate in segregation at a security level with substantially fewer opportunities. JA732; *see Martin I*, 858 F.3d at 250 (relying on case that held that "confinement in administrative segregation resulting in ***reduced access to amenities and programs***" constituted an adverse action) (emphasis added) (citing *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)).

While the district court correctly determined that delaying or extending an inmate's stay in segregation constitutes an adverse act, *see* JA732, it erred in finding that his progression from SM-0 to SM-1 was not delayed. JA734. Snodgrass was initially placed in temporary segregation on September 21, 2015. He was then officially assigned to SM-0 status on October 26, 2015.[4] JA424. Despite immediately and repeatedly

---

[4] The district court cites to Duncan's discovery response that Snodgrass was assigned to SM-0 status on November 2, 2015. JA733. It is not clear why Duncan's testimony deviates from the report that Duncan ran herself on Snodgrass's Institutional Classification Authority Hearing, which lists the date as October 26, 2015. JA424 (reflecting that the report was "generated by Duncan, A B"). The district court also relied on Duncan's response that Snodgrass's status was reviewed and changed at a Unit Management Team meeting on February 26, 2016, JA733, but this does not contradict Snodgrass's testimony that he was not *moved* into an SM-1 cell and provided with the SM-1 privileges until March 2, 2016. *See* JA701.

requesting the "Challenge Series" workbooks necessary for him to progress to SM-1, he did not ultimately receive them until December 2, 2015—nearly six weeks after he was officially designated SM-0. JA700. He was then not elevated to SM-1 status until March 2, 2016—**128 days** after he was designated SM-0, and **over a month** longer than the 90 days required by the Step Down Program's required timeline. JA701; JA459.

As discussed above, *see* Part I.B, an action is sufficiently "adverse" if it resulted in something more than a *"de minimis* inconvenience." *ACLU of Md.*, 999 F.2d at 786 n.6. At security level SM-0, inmates are prohibited or significantly restricted from basic programs like holding a job, purchasing food items at commissary, certain visitation privileges, or having a television in their cell. JA458. At SM-2, inmates are afforded employment opportunities, access to televisions and AM/FM radios, and video visitation. JA458. The stark differences between the different levels certainly go beyond a "de minimis inconvenience" that would deter a person of ordinary firmness from exercising their First Amendment rights. *See Brunson v. Nichols*, 875 F.3d 275, 277 (5th Cir. 2017) (holding that twenty-eight days in segregation was not *de minimis*); *Hart v.*

*Hairston*, 343 F.3d 762, 764 (5th Cir. 2003) (finding that twenty-seven days of commissary and cell restrictions constituted an adverse act).

Yet somehow the district court was "persuaded" that this timeframe was "approximately 90 days," JA734, and therefore the delay did not constitute an adverse action. This is plainly wrong—128 days is nearly *one and a half times* as many days as 90 days. But the finding also directly contradicts the district court's own determination, just paragraphs above, that "delaying or extending an inmate's stay in segregation is 'more than a de minimis inconvenience' that 'would likely deter a person of ordinary fitness from the exercise of First Amendment rights.'" JA732. Snodgrass demonstrated that his SM-0 status was "delayed [and] extended" by over a month. By the district court's own reasoning, he met the adverse action element of his retaliation claim with regard to his delay progression to SM-1.

Finally, the evidence at trial demonstrated that Snodgrass's protected First Amendment conduct was a "substantial or motivating factor" in Defendants' adverse conduct. *Mt. Healthy*, 429 U.S. at 287. For a plaintiff to meet the causation requirement, he first must show that the defendants knew about the protected First Amendment activity and that

there was "some degree of temporal proximity to suggest a causal connection." *See supra* Part I.B.3.

The evidence at trial made clear that Defendants were aware of both his testimony against Blount and his grievances. Snodgrass testified that Defendants made "references" to him about "filing paperwork" testifying, " JA496; Defendant Adams told Snodgrass that he "F--cked up" for testifying, JA JA471; Warden Barksdale told Snodgrass's mother that he should stop "fighting other peoples' battles," JA498; and Donnell Hickman, another inmate, testified that he heard Gilbert telling Snodgrass that, unless he stopped filing grievances, he would not be released from segregation. JA477-478. It is clear that Defendants knew about Snodgrass's protected activity on behalf of both himself and inmate Blount.

The evidence also demonstrates a clear temporal proximity between his conduct and Defendants' actions. Snodgrass was officially moved to formal segregation on October 26, 2015 and began asking for his Challenge Series workbooks. JA424. Less than four weeks later on November 19, Snodgrass testified on behalf of Donnell Blount in his suit against ROSP officials. JA35. Then on November 20—one day later—Warden

Barksdale tells Snodgrass's mother that he should stop "fighting other people's battles" if he wanted to get out of segregation.  JA498.

Martin II and Mt. Healthy require Defendants to demonstrate by a preponderance of the evidence that they had a legitimate reason to delay Snodgrass's progress through the program between his original assignment to SM-0 and February 2016.  *Martin II*, 977 F.3d at 302.  By Defendants' own admission, there is ***no justification*** to deny an inmate the Challenge Series books.  JA481.  Defendants did not provide any reason, legitimate or not, for withholding the workbooks.  And multiple other inmates testified that the books were typically provided much sooner than the nearly six weeks that Snodgrass had to wait.  JA477-478.

Because Snodgrass's month-long delay through the Step Down program had a causal connection to Defendants unjustifiably withholding the Challenge Series workbooks, the district court's ruling that he did not experience delays from SM-0 to SM-1 was erroneous.  This Court should reverse.

**B.    The District Court Erred In Ruling For Defendants Regarding The Delays Snodgrass Experienced At Level SM-1**

The district court also erred in finding that Snodgrass did not make out a *prima facie* case of retaliation with regard to his delay from status level SM-1 to SM-2 because he did not satisfy the causal connection requirement.    Despite acknowledging that Snodgrass's progression from SM-1 to SM-2 was delayed by nearly two months, JA733-734, and that Defendants attribute the delay to his failure to "me[et] all the requirements of the step down program"—even though this failure was directly attributable to the Defendants themselves—the court still found for Defendants.  This was an error.

### 1.    *Prima Facie* Case

It is undisputed that Snodgrass established the first two elements of a *prima facie* case—he engaged in protected First Amendment conduct by accessing the courts and utilizing the prison grievance system, and extended time in segregation is an adverse action.  *See supra* Part IV.B.1, B.2.  Snodgrass also established the "causal connection."  Much like the denial of the Challenge Series workbooks, Defendants' failure to provide Snodgrass with access to classes necessary to advance from SM-1 to SM-2 evinces a retaliatory intent.    Defendants were fully aware that

Snodgrass would be unable to advance to SM-2 without attending the classes, and yet Snodgrass was not permitted to attend until several months into his SM-1 designation. JA474. And the temporal proximity speaks for itself: Defendants refused to provide access to the necessary classes from March 2, 2016 until late July. JA474. This lawsuit was filed on March 2, 2016. JA23.

### 2. Defendants Lack of Legitimate Justification for the Delay

Defendants cannot meet their burden under *Mt. Healthy* to show by a preponderance of the evidence that they had a legitimate reason for delaying Snodgrass's progress from SM-1 to SM-2. Having completed all necessary Challenge Series workbooks and received no disciplinary charges, Snodgrass should have been promoted to SM-2 in early August. JA473-474. At his ICA hearing, however, Defendants denied him his advancement for the sole reason that he "ha[d] not met all the requirements of the step down program." JA464. When Snodgrass filed a grievance requesting additional explanation for his denied promotion for a third consecutive time, Duncan stated only that he "continue[d] to have poor status ratings in Respect." JA462. Defendants did not provide any further explanation or evidence corroborating this—either to Snodgrass or

the court. Furthermore, Defendants admitted at trial that there is no specific criteria on which ROSP officials ground decisions pertaining to "respect" ratings. JA480. In yet another attempt to justify their actions, Defendants at trial offered a third distinct explanation: Snodgrass's co-classmates in the Step Down program left the unit, which caused his cohort to be delayed. JA500. But Defendants also conceded that individualized instruction was available. JA475. Defendants' jumbled and conflicting reasoning does not provide a legitimate justification for the delay.

**CONCLUSION**

For the foregoing reasons, this Court should (1) reverse the district court's order granting summary judgment on Snodgrass's claims of retaliation based on being publicly labeled a snitch and his Eighth Amendment claim for excessive force, (2) reverse the district court's order denying Snodgrass leave to amend his complaint, and (3) vacate the district court's order entering judgment for defendants on Snodgrass's retaliation claim based on his delayed progression through the Step Down Program.

Dated: August 1, 2024                    Respectfully submitted,

                                        /s/ Meredith Garagiola
                                        Benjamin D. Singer
                                        Meredith N. Garagiola
                                            *Court-Assigned Counsel*
                                        Virginia N. Oat
                                        Brian P. Quinn
                                        O'MELVENY & MYERS LLP
                                        1625 Eye Street NW
                                        Washington, D.C. 20006-4001
                                        (202) 383-5300 (telephone)
                                        (202) 383-5414 (facsimile)

                                        *Counsel for Plaintiff-Appellant*
                                        *Kevin Snodgrass, Jr.*

## REQUEST FOR ORAL ARGUMENT

Plaintiff-Appellant Kevin Snodgrass, Jr. requests oral argument. The questions at issue here involve significant and recurring issues that this Court has assigned counsel to address. Oral argument would help the Court fully understand the facts and issues in this case and the errors in the judgment under review.

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 12,020 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Century Schoolbook 14-point font.

<u>/s/ Meredith Garagiola</u>
Meredith N. Garagiola

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 1st day of August, 2024, I electronically filed the foregoing with the Clerk of the Court using the appellate CM/ECF system. All participants are registered CM/ECF users, and will be served by the appellate CM/ECF system.

/s/ Meredith Garagiola
Meredith N. Garagiola