No. 24-6398

―――――――――

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

―――――――――

KEVIN SNODGRASS, JR.,

*Plaintiff-Appellant,*

v.

CHRISTOPHER GILBERT; REANNE KEGLEY, Counselor at ROSP;
AMEE DUNCAN, Counselor at ROSP; TORI RAIFORD, Unit Manager
at ROSP; WALTER SWINEY, Unit Manager at ROSP; GARRY AD-
AMS, Lieutenant at ROSP; E.R. BARKSDALE, Head Warden at ROSP;
JOHN HAMILTON, Asst. Warden at ROSP; GERALD WASHINGTON,
Central Classification Services VADOC; DAVID A. STILL, Cap-
tain/Unit Manager at ROSP; A. GALLIHAR, Major/Chief of Housing
and Program at ROSP; HENRY PONTON, Region Director-Western
VADOC; KELLY M. STEWART, Counselor at ROSP,

*Defendants-Appellees.*

―――――――――

On Appeal from the United States District Court
For the Western District of Virginia at Roanoke

―――――――――

**REPLY BRIEF FOR PLAINTIFF-APPELLANT**

―――――――――

Benjamin D. Singer
Meredith N. Garagiola
   *Court-Assigned Counsel*
Virginia N. Oat
Brian P. Quinn
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, D.C. 20006-4001
(202) 383-5300 (telephone)
(202) 383-5414 (facsimile)

*Counsel for Plaintiff-Appellant Kevin Snodgrass, Jr.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................... 1

ARGUMENT ......................................................................................... 4

I. Snodgrass Raised Triable Disputes On His Excessive Force Claim ............................................................... 4

    A. Factual disputes exist as to whether Gilbert's use of OC spray violated Snodgrass's Eighth Amendment rights ............................................. 4

    B. Gilbert's conduct is not immunized by qualified immunity because Snodgrass's right to be free from wanton infliction of pepper spray was clearly established ..................................................... 11

II. Snodgrass's First Amendment Retaliation Claim Is Viable, And He Has Sufficiently Established That Appellees Retaliated Against Him ..................................... 13

    A. Snodgrass's snitch retaliation claim was properly before the district court .......................................... 13

    B. Snodgrass's snitch retaliation claim has merit ........... 16

    C. Appellees are not entitled to qualified immunity on Snodgrass's snitch retaliation claim ...................... 20

III. Appellees Ignore The District Court's Errors Regarding Snodgrass's Step-Down Program Retaliation Claim ........... 23

    A. SM-0 to SM-1 ..................................................... 23

    B. SM-1 to SM-2 ..................................................... 25

IV. The District Court Used The Wrong Standard When It Denied Snodgrass's Motion To Supplement The Complaint ............................................................... 27

CONCLUSION ..................................................................................... 33

## TABLE OF CONTENTS
## (continued)

**Page**

CERTIFICATE OF COMPLIANCE..........................................................34

CERTIFICATE OF SERVICE................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. al-Kidd,*
563 U.S. 731 (2011).................................................................21

*Benefield v. McDowall,*
241 F.3d 1267 (10th Cir. 2001)..............................17, 18, 22

*Booker v. S.C. Dep't of Corrs.,*
855 F.3d 533 (4th Cir. 2017)..................................15, 16, 20

*Booker v. S.C. Dep't of Corrs.,*
583 F. App'x 43 (4th Cir. 2014)..........................................21

*Brooks v. Johnson,*
924 F.3d 104 (4th Cir. 2019)..................................10, 11, 31

*Constantine v. Rectors & Visitors of George Mason Univ.,*
411 F.3d 474 (4th Cir. 2005)........................................18, 21

*De'Lonta v. Angelone,*
330 F.3d 630 (4th Cir. 2003)................................................18

*Dean v. Jones,*
984 F.3d 295 (4th Cir. 2021)................................................12

*Erickson v. Pardus,*
551 U.S. 89 (2007).................................................................15

*Harmon v. Berry,*
728 F.2d 1407 (11th Cir. 1984)...........................................22

*Iko v. Shreve,*
535 F.3d 225 (4th Cir. 2008)................................................12

*Irving v. Dormire,*
519 F.3d 441 (8th Cir. 2008)........................................18, 22

*Laber v. Harvey,*
438 F.3d 404 (4th Cir. 2006)................................................28

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Lewis v. Caraballo,*
  98 F.4th 521 (4th Cir. 2024) ............................................................. 21

*Moore v. Mann,*
  823 F. App'x 92 (3d Cir. 2020) ......................................................... 18

*Northington v. Marin,*
  102 F.3d 1564 (10th Cir. 1996) ........................................................ 18

*Reeves v. King,*
  774 F.3d 430 (8th Cir. 2014) ..................................................... 19, 20

*Tedder v. Johnson,*
  527 F. App'x 269 (4th Cir. 2013) ............................................... 12, 31

*Thomas v. District of Columbia,*
  887 F. Supp. 1 (D.D.C. 1995) ........................................................... 17

*Thompson v. Commonwealth,*
  878 F.3d 89 (4th Cir. 2017) .................................................... 7, 8, 11

*United States v. Ancient Coin Collectors Guild,*
  899 F.3d 295 (4th Cir. 2018) .............................................................. 9

*Walker v. United Parcel Serv., Inc.,*
  240 F.3d 1268 (10th Cir. 2001) ........................................................ 29

*Williams v. Benjamin,*
  77 F.3d 756 (4th Cir. 1996) ................................................... 8, 10, 31

*Williams v. Horner,*
  403 F. App'x 138 (8th Cir. 2010) ..................................................... 19

*Wilson v. Layne,*
  526 U.S. 603 (1999) ......................................................................... 20

# INTRODUCTION

At every turn, Appellees sidestep the issues that decide this appeal. They rely on a distorted version of Snodgrass's claims that is unsupported by both the record and the law. They misrepresent contested facts as "undisputed" and misconstrue applicable law while ignoring most of Snodgrass's arguments on appeal. This Court should reverse and vacate the district court's decisions on Snodgrass's claims so that, after eight years of litigation, his claims can be properly adjudicated.

*First*, Appellees do not address the fundamental flaw in the district court's grant of summary judgment on Snodgrass's excessive force claim—that the record reflects numerous factual disputes that, when taken in the light most favorable to Snodgrass, clearly demonstrate an Eighth Amendment violation. Appellees mischaracterize the record and assert that the circumstances are undisputed, despite Snodgrass's vigorous and consistent arguments to the contrary. Appellees insist that Gilbert's decision to blast pepper spray into Snodgrass's face and eyes three times within five minutes was "humane" and necessary under the circumstances, despite plenty of evidence to the contrary. Appellees create, for the first time on appeal, an entirely new rationale for Gilbert's actions,

adding to the long line of shifting rationales for his conduct that have bedeviled this case. They further claim that, even if this Court finds that Gilbert used excessive force, he is entitled to qualified immunity because there is no case clearly establishing that his conduct was unconstitutional. This is wrong. The central question of the qualified immunity inquiry is not whether there is a case whose facts are exactly the same as the ones at issue here, but instead whether it was clearly established that the law did not permit Gilbert to apply force for the purpose of causing harm. It was clearly established that an officer may not use force to wantonly inflict pain at the time of Gilbert's conduct.

*Second*, Snodgrass's retaliation claim regarding Appellees labeling him a "snitch" is properly before the Court. Appellees disagree, arguing that Snodgrass, who was a pro se litigant, did not properly craft his "snitch" retaliation claim. But this Court construes pro se pleadings liberally, and Snodgrass's claim was properly crafted. Appellees' alternative argument—that they are protected by qualified immunity—similarly fails. There was a consensus among the circuit courts that the risk of labeling a prisoner a "snitch" is widely known to be highly dangerous—and who better to know that than correctional officers. And as both the

United States Supreme Court and this Court have held, a consensus among the circuit courts is sufficient to put officers on notice of a "clearly established" right.

*Third*, Appellees ignore nearly all of the flaws in the district court's holding regarding the retaliatory delay of Snodgrass's time in segregation. Instead of addressing these issues head on, Appellees repeatedly urge this Court to defer to the district court without question, despite record evidence that demonstrates its analysis is flawed on both Snodgrass's retaliation claim and Appellees' failure to meet the "same decision" requirement established under *Mt. Healthy* and adopted by this Court in *Martin II*.

*Fourth*, Appellees never address the district court's use of the wrong standard in denying Snodgrass's request to supplement his complaint with allegations of Appellees' related and continued conduct. Instead, they cite numerous ways that supplementing the complaint would have prejudiced them, none of which are applicable. Their arguments fail to challenge what is clear: the district court should have permitted Snodgrass to supplement his complaint and failed to do so because it applied the wrong legal standard.

# ARGUMENT

## I. Snodgrass Raised Triable Disputes On His Excessive Force Claim.

The district court failed to address—or even mention—several pieces of key evidence in Snodgrass's favor regarding Gilbert's repeated deployment of pepper spray into Snodgrass's face and eyes, as it was required to do at the summary judgment stage. Nonetheless, Appellees argue that it correctly found that there was no dispute of material fact. Appellees' Br. 28 ("AB"). They also assert that Snodgrass cites no authority that clearly establishes that Snodgrass has an Eighth Amendment right to be free from excessive force involving pepper spray. AB 28, 38-40. Both assertions are incorrect.

### A. Factual disputes exist as to whether Gilbert's use of OC spray violated Snodgrass's Eighth Amendment rights.

The district court failed to view the evidence regarding Gilbert's impermissible use of force against Snodgrass in the light most favorable to Snodgrass, as was required at summary judgment. Appellees do not dispute that Gilbert's repeated blasting of pepper spray into Snodgrass's face and eyes was "nontrivial." *See* Appellant's Br. 33-34. The only question is therefore whether the facts, when viewed in the light most favorable to Snodgrass, demonstrate an impermissible subjective intent

behind Gilbert's conduct. *Id.* at 34. They do, and Appellees' arguments to the contrary are unavailing.

**1. Need for force.** There was no need for Gilbert to pepper spray Snodgrass in the face and eyes three times in five minutes. Indeed, over the course of this case, Appellees have constantly shifted their justifications for Gilbert's conduct. First, Gilbert claimed it was necessary because Snodgrass threatened him with bodily harm. *See, e.g.,* JA203. But the undisputed evidence belies this claim—Warden Barksdale dismissed the infraction against Snodgrass involving that accusation. Snodgrass also would not have been *able* to cause Gilbert bodily harm when he was alone in a locked cell. JA27-28.

Appellees then alleged that Gilbert needed to repeatedly spray Snodgrass in the face because Snodgrass refused to allow them to search his cell. JA107, JA155. This fact is disputed. *See, e.g.*, JA419 ("Plaintiff did not refuse to have his cell searched."). Appellees now assert for the first time that Gilbert needed to repeatedly spray Snodgrass in the face because he refused to submit to restraints. *See* AB 35-37. While it is undisputed that Snodgrass initially protested restraints based on his understanding that they were not required under VDOC policy, this is the

first time that Appellees allege that the force was necessary *because* of Snodgrass's initial refusal. As Appellees' own changing allegations demonstrate, the material facts regarding Gilbert's assault on Snodgrass are in dispute.

Snodgrass's explanation of the events further demonstrate a dispute regarding the need for force. For instance, Snodgrass's complaint does not suggest, as Appellees claim, that he refused restraints at any point *after* the first or second bursts. *See* JA27. It states only that he submitted to restraints after Gilbert's assault. *See id.* ("[P]laintiff was blinded and choking from the 'OC'-spray and complied with being restrained."). And more importantly, Snodgrass has consistently maintained that a review of prison security video footage, which he was never permitted to do, JA420, JA170-171, would clearly demonstrate that Gilbert's use of force was "excessive" and "unnecessary," *see, e.g.*, JA267, JA268, JA182. Indeed, he argued that Appellees denied his request for this footage "to justify a possible time difference" between Appellees' version of the incident and Snodgrass's account. *See* JA182. Appellees' claim that, "[a]fter each burst of spray, Gilbert waited two or three minutes to see whether Snodgrass would comply" and that "[w]hen

Snodgrass complied, the OC sprays stopped immediately," AB 9, 37, is in obvious dispute.

**2. Proportionality of force.** Gilbert's assault on Snodgrass was not proportional to any need for force. Appellees claim Gilbert used a "justified level of force" because Snodgrass is a "hostile inmate with a violent history" who was "noncompliant with verbal commands." AB 33. Not so. As discussed, there was no need for force *at all* because, as Snodgrass repeatedly stated, he never posed a threat to anyone during the events in question. *See, e.g.*, JA27, JA247 ("The video/audio footage will prove that I never made any threats of physical harm to him or any of the other officers present."). Because there was "no need [for] force, the force used was necessarily excessive in relation to the need." *Thompson v. Commonwealth*, 878 F.3d 89, 100 (4th Cir. 2017); *id.* ("[S]ince there was never a need, the use of force was disproportionate from start to finish."). And even accepting Appellees' newest justification—that some force was necessary because Snodgrass protested being handcuffed—Snodgrass made clear that he did *not* resist restraint after the first or second bursts. *See* JA27. It is "well-established . . . that officers may not

'use gratuitous force against a prisoner who has already been subdued . . . [or] incapacitated.'" *See Thompson*, 878 F.3d at 104.

The only case Appellees rely on for their proportionality argument is *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996), which has nothing to say about repeated blasts of pepper spray into an inmate's face. Appellees cite *Williams* as finding that pepper spray is a "relatively 'mild' response compared to other forms of force."  AB 33.  But as Appellees themselves point out, this characterization of pepper spray involved "*the initial application* of [pepper spray] that indicate[d] a 'tempered' response." *Williams*, 77 F.3d at 763; *id.* ("[M]ace *can be* constitutionally used *in small quantities* . . . ."); *id.* ("*A limited application* of mace *may be* much more humane and effective than a flesh to flesh confrontation.") (internal citation omitted).  *Williams* simply compared the use of pepper spray to "flesh to flesh confrontation."  *Id.*  It did not authorize officers to use any amount of pepper spray in any situation and then call it proportional.

**3. Reasonably perceived threat**.  Appellees argue that despite the fact that Snodgrass was alone in a locked cell, Gilbert reasonably perceived that Snodgrass "posed an actual and unacceptable threat to the

safety of staff and other inmates." AB 34. The factual record suggests otherwise, and the district court was required to consider these facts in the light most favorable to Snodgrass. For example, Appellees insist that officers needed to search Snodgrass's cell for "intoxicants." *Id.* at 33 n.4. But whether Snodgrass had contraband is disputed. *See* JA246 ("I told [Gilbert] that I didn't have no MASH."). It is also disputed that Snodgrass acted "in a belligerent manner," AB 34. Snodgrass has consistently rejected these claims. *See* JA27, JA246, JA268 (reporting to Gilbert that he was "not a threat"). That Warden Barksdale later dismissed a disciplinary infraction to this end corroborates Snodgrass's testimony. *See* JA181. At this stage, the Court must view the evidence in the light most favorable to the non-moving party. *United States v. Ancient Coin Collectors Guild*, 899 F.3d 295, 312 (4th Cir. 2018). It cannot, as Appellees propose, ignore Snodgrass's evidence, while assuming the truth of Gilbert's contentions.

**4. Tempered severity of force**. Gilbert did not temper the severity of the force that he used against Snodgrass. Appellees argue that Gilbert tempered his response because he and other staff tried to "persuade" Snodgrass to comply, and that Gilbert deployed the second and

third sprays to Snodgrass's face only after "waiting for [the first] to . . . prove ineffective." AB 35-36, 38. Both of these justifications fail.

First, this Court made clear in *Brooks v. Johnson* that "verbal attempts to reason with and calm an unruly detainee before resort to force *do not preclude an inference that force was applied maliciously*." 924 F.3d 104, 117 (4th Cir. 2019) (emphasis added and quotations omitted). Second, as discussed, Snodgrass disputes that Gilbert waited for any meaningful period of time between the first, second, and third spray to his face, and at summary judgment, this dispute must be resolved in Snodgrass's favor. *See supra* Section I.A.1. Indeed, Gilbert's own affidavit makes *no mention* of any effort to avoid the second or third blasts. JA202-204.

Appellees also claim Snodgrass received "fresh air and water decontamination"—flatly ignoring the record evidence that Snodgrass was denied the opportunity to wash his eyes and then denied a shower the next day. JA28. *Compare Williams*, 77 F.3d at 763 ("[P]rompt washing of the maced area of the body will usually provide immediate relief from pain."). Appellees' generalized statements about how OC spray can, in some circumstances, "indicate a 'tempered' response" when used instead of "other forms of force" do not redeem the particular use of it here. AB 36.

**B. Gilbert's conduct is not immunized by qualified immunity because Snodgrass's right to be free from wanton infliction of pepper spray was clearly established.**

Appellees contend that even if Snodgrass has raised a triable issue of fact regarding a violation of his Eighth Amendment rights, Gilbert nonetheless is entitled to qualified immunity because there is not an "obvious" enough case establishing that he is prohibited from repeatedly deploying pepper spray into an inmate's face and eyes when the inmate is alone in a locked cell. AB 38-40. This argument misses the mark in several respects.

First, Appellees misstate the nature of the qualified immunity inquiry for an Eighth Amendment excessive force claim. The question is not whether there is a prior case on point with precisely the same facts. "Because 'the case law is intent-specific' . . . a corrections officer who acts with that culpable state of mind reasonably should know that [he] is violating the law," even if the issue has not arisen in precisely the same factual setting. *Brooks*, 924 F.3d at 118-19 (citation omitted); *see also Thompson*, 878 F.3d at 106 ("[A]n official's state of mind is a reference point by which she can reasonably assess conformity to the law because the case law is intent-specific."). Appellees' assertion that "[n]o case law

clearly establishes that Gilbert's use of force was unconstitutional" either misunderstands the nature of the constitutional prohibition, or contradicts their own assertion that "the objective prong is not at issue in this appeal[.]" AB 39, 29 n.3. The question under the *Whitley* factors is not whether officers used objectively greater force than the law permits—it is whether the officers subjectively acted with unconstitutional motives. And it is clearly established that an officer "cannot claim qualified immunity [for] malicious and sadistic use of force." *Tedder v. Johnson*, 527 F. App'x 269, 274 (4th Cir. 2013).

Second, Snodgrass's clearly established right is not actually in dispute. The district court agreed that the use of OC spray in "quantities greater than necessary" violates "well established" law. JA392 (citation omitted); *see Iko v. Shreve*, 535 F.3d 225, 239-40 (4th Cir. 2008) (holding that an inmate's "right to be free from excessive use of pepper spray [i]s clearly established"); *Dean v. Jones*, 984 F.3d 295, 311 (4th Cir. 2021) (explaining that "*Iko* is *hardly an outlier*" for notice purposes). Rather, the district court's error was its failure to view the factual disputes surrounding Gilbert's use of force in the light most favorable to Snodgrass— as required at the summary judgment stage—and mistakenly

determining that there was no triable dispute as to whether Gilbert wantonly inflicted harm. JA393-394.

Interpreted in the light most favorable to Snodgrass, the facts make clear that Snodgrass established a triable Eighth Amendment Claim under clearly established law, making qualified immunity inapplicable. This Court should reverse the district court's contrary determination.

## II. Snodgrass's First Amendment Retaliation Claim Is Viable, And He Has Sufficiently Established That Appellees Retaliated Against Him.

### A. Snodgrass's snitch retaliation claim was properly before the district court.

Snodgrass is not raising his snitch retaliation claim for the first time on appeal. Snodgrass's pleadings and papers below—construed liberally, as this Court requires of lower courts for pro se plaintiffs—make clear that Snodgrass brought his snitch claim before the district court.

Snodgrass's complaint makes clear that Adams and Lewis called Snodgrass a "snitch" because he participated in Red Onion inmate Donnell Blount's lawsuit. JA28, JA35. In his supplemental complaint, Snodgrass alleged that when Adams "chose[] to label [Snodgrass] a 'SNITCH,'" it was "retaliation for testifying against [Adams]." JA273. Snodgrass also raised the issue in his declaration in support of his motion for

summary judgment, titled "In re: Retaliation/and Declaration." JA338. Snodgrass made clear that, since testifying for Blount, he had "received threats of extended segregated confinement [and] *been called a SNITCH*." JA338 (emphasis added). The snitch allegations also appeared in Snodgrass's pro se motion for summary judgment. JA258, JA271, JA276.

The very order from which Snodgrass appeals—the district court's summary judgment order—demonstrates the adequacy of Snodgrass's pleadings and papers. The district court expressly recognized Snodgrass's allegation that Appellees took "retaliatory actions against him," including by calling him a "snitch." JA409. While the court then incorrectly omitted the snitch allegation from the issues to be tried, JA407-408 (discussing the "snitch" comment under the subheading "First Amendment and Retaliation" alongside other adverse acts like "verbal threats . . . [to] lengthen" Snodgrass's stay in segregated housing and an officer's refusal to provide a shower), it *did* recognize and consider the allegation based on Snodgrass's pleadings and papers.

Still, Appellees allege that Snodgrass did not do enough. AB 50-53. Because Snodgrass also identified the snitch allegation under the section

of his summary-judgment motion addressing his Eighth Amendment claims, Appellees say, Snodgrass did not properly raise that claim. *See* AB 52. They assert that the district court "understood Snodgrass to be raising an Eighth Amendment claim about being called a 'snitch.'" AB 52. Both Snodgrass's summary judgment motion and the district court's opinion flatly contradict that reading. While Snodgrass mentioned the snitch allegation in his discussion of his excessive force claim, he *also* identified it in the section discussing First Amendment retaliation. JA273. And the district court's discussion of the snitch allegations is limited *only* to the section titled "First Amendment and Retaliation." JA273, JA407.

Appellees also ignore this Court's "obligat[ion] to 'liberally construe' pro se complaints, 'however inartfully pleaded.'" *Booker v. S.C. Dep't of Corrs.*, 855 F.3d 533, 540 (4th Cir. 2017) ("*Booker II*") (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Indeed, the district court recognized just that, noting that it must construe the complaint "liberally." JA389.

Appellees' proposed construction of Snodgrass's filings contravenes *Booker II*. In that case, this Court noted that Booker's pro se complaint had "generally alleged a violation of the First Amendment." 855 F.3d at

540. The general allegation, coupled with "detailed factual allegations," sufficed to require the district court to broaden its analysis. *Id.* Here, Snodgrass's complaint easily clears that bar. Snodgrass alleged facts that Adams and Lewis had retaliated against him, and he included a general reference to retaliation as a First Amendment cause of action. JA40-43. Similarly, the complaint and summary judgment papers contained detailed factual allegations addressing Appellees labeling him a snitch. JA28, JA35, JA258, JA271, JA273. Any argument that this issue—when construed liberally—is not properly before the Court is contradicted by Snodgrass's complaint and by the district court's order.

## B. Snodgrass's snitch retaliation claim has merit.

When Adams approached Snodgrass in his housing unit's common area, he yelled that Snodgrass was a "F---in SNITCH." JA35, JA258. Other inmates who were present for the interaction then followed Adam's lead and began "chant[ing]" that Snodgrass was a snitch. JA273.[1] Calling Snodgrass a snitch within earshot of other inmates was sufficient to

---

[1] If the claims had survived summary judgment, Snodgrass could have developed this point, evidenced by his attempt to introduce testimony that he was "still being referred to as a snitch," which the magistrate later refused to allow at trial. JA511.

deter him from the exercise of his First Amendment rights because it put his safety at serious risk.

Despite this significant risk, Appellees argue that "calling a prisoner a 'snitch' is not enough" to state a First Amendment claim because it would not deter prisoners from exercising their First Amendment rights. AB 61-62. They also argue that this is "especially" true here because Snodgrass "snitch[ed]" against a correctional officer, rather than another inmate. AB 53-58. Under the facts of this case, this is a distinction without a difference.

In the prison context, "few acts . . . could be more likely to lead to physical injury than spreading rumors of . . . informing." *Thomas v. District of Columbia*, 887 F. Supp. 1, 4 (D.D.C. 1995); *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001) ("[A] reputation as a snitch places [an] inmate at a substantial risk of injury at [other inmates'] hands."). Courts have recognized this principle in both First and Eighth Amendment contexts.

For example, to prevail on an Eighth Amendment failure to protect claim, a prisoner must show he faced "a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged

conditions." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). Courts have repeatedly recognized that the "snitch" label meets this high threshold. *See, e.g.*, *Northington v. Marin*, 102 F.3d 1564, 1567 (10th Cir. 1996) (finding deliberate indifference when an officer "spread a rumor in the jail that an inmate was a snitch," knowing "the inmate would probably be beaten by other inmates"); *Moore v. Mann*, 823 F. App'x 92, 96 (3d Cir. 2020) (noting "other circuits have held that prison officials' failure to protect an inmate labeled a snitch constitutes deliberate indifference") (citing *Irving v. Dormire*, 519 F.3d 441, 451 (8th Cir. 2008); *Benefield*, 241 F.3d at 1271; *Northington*, 102 F.3d at 1567.

Appellees disregard this law and make no effort to reconcile how an officer calling a prisoner a "snitch" is sufficiently dangerous to meet the substantial risk of serious harm standard, *De'Lonta*, 330 F.3d at 634, but not adverse enough to "deter a person of ordinary firmness from the exercise of First Amendment rights," *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005). Accordingly to Appellees' logic, an officer is liable under the Eighth Amendment if they fail to protect a prisoner labeled a snitch but is *not* liable for applying the snitch label in response to protected First Amendment activity. This Court should not adopt this illogical reasoning.

Appellees point only to a single footnote from an unpublished, out-of-circuit concurrence for their argument that being labeled a snitch is not dangerous for inmates testifying against correctional officers.  AB 55 (citing *Williams v. Horner*, 403 F. App'x 138, 142 n.3 (8th Cir. 2010)).  But that case made clear that this observation applies only when "the inmates who heard the exchange *so understood it*" as a reference to an inmate "snitching" against a correctional officer, not another inmate.  *Williams*, 403 F. App'x at 142 n.3.  The facts here do not indicate that Snodgrass's fellow inmates understood anything other than the fact that Snodgrass had allegedly "snitched" against someone else.

Appellees also cite *Reeves v. King*, 774 F.3d 430, 433 (8th Cir. 2014), for the general proposition that "disclosure that an inmate filed grievances against correctional officers . . . does not place the reporting inmate at a substantial risk of serious harm, [because] inmates are unlikely to retaliate against a fellow inmate for seeking to end abuse by prison guards."  AB 54-55.  But *Reeves* relies only on the same footnote from *Williams* for this assertion.  *Reeves*, 774 F.3d at 433 (citing *Williams*, 403 F. App'x at 142 n.3).  Taken in the light most favorable to Snodgrass, the facts make clear that other prisoners heard Adams call him a snitch, and

began chanting the same in response.  JA273.  Because the other inmates'

reaction to hearing Adams call Snodgrass a snitch was to begin chanting

the same—and continuing to call him that later—it is reasonable to infer

that they were *not* under the impression that the "snitch[ing]" served

their interests.  *See Reeves*, 774 F.3d at 432-33 (finding that, even though

plaintiff "snitch[ed]" on a prison nurse, he had "acted in contravention to

the interests of other inmates by exposing that [she] was bringing con-

traband into the facility" and was therefore at risk).

### C. Appellees are not entitled to qualified immunity on Snodgrass's snitch retaliation claim.

Finally, Appellees argue that Adams and Lewis are entitled to qual-

ified immunity for putting Snodgrass at serious risk of harm because the

right at issue was not clearly established.  AB 58-60.  They argue this

Court cannot look any further than its own opinions, the U.S. Supreme

Court, and the Supreme Court of Virginia in construing whether the right

was "clearly established."  AB 58.  But this is a distortion of the relevant

law.  Snodgrass can also show that the right was clearly established by

demonstrating a consensus among the circuits.  *See Wilson v. Layne*, 526

U.S. 603, 617 (1999); *Booker II*, 855 F.3d at 538-39 ("[W]hen there are no

such decisions from courts of controlling authority, we may look to 'a

consensus of cases of persuasive authority' from *other jurisdictions*, if such exists.") (citation omitted); *Lewis v. Caraballo*, 98 F.4th 521, 534 (4th Cir. 2024) ("To determine if a constitutional right is clearly established, [courts] look to 'controlling authority' or to a 'robust consensus of cases of persuasive authority.'") (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).  He has done so.

Appellees do not dispute that Snodgrass was engaged in First Amendment activity when he participated in civil litigation against government officials, nor the existence of a temporal connection between his conduct and the retaliation.  The only remaining question is whether it was sufficiently clear, in 2015, that the risks attendant to being called a "snitch" would deter a reasonable inmate from engaging in First Amendment conduct.  *See Constantine*, 411 F.3d at 499; *Booker v. S.C. Dep't of Corr.*, 583 F. App'x 43, 44 (4th Cir. 2014) ("*Booker I*").  As at least ten cases from various Courts of Appeals have shown, the answer is yes.  *See* Appellant's Br. 23-26.

Indeed, some of these courts in these cases adjudicated this question in the context of Eighth Amendment claims.  But those cases apply

with equal force in the context of "snitch" claims like this one. *See supra* Section II.B. Either way, the analysis boils down to a common question: did the official's conduct put the prisoner in danger? By 2015, the case law had clearly established that calling a prisoner "snitch" puts the prisoner in physical danger. *See Irving v. Dormire*, 519 F.3d 441, 451 (8th Cir. 2008); *see also Harmon v. Berry*, 728 F.2d 1407, 1408-09 (11th Cir. 1984).

Moreover, several of the cases *explicitly* hold that the risk that accompanies calling a prisoner a snitch is clearly established. *Benefield*, 241 F.3d at 1271 (holding *Northington* clearly established that calling a prisoner a "snitch" puts the prisoner in jeopardy). *Irving*, for example, was unequivocal:

> [Defendant] was on *fair notice* that to falsely label an inmate a snitch is to unreasonably subject that inmate to the threat of a substantial risk of serious harm at the hands of his fellow inmates. After all, who better knows the opprobrium and consequent effect thereof that attaches to the label of snitch than those who work daily within the inmate population.

519 F.3d at 451 (emphasis added). Calling a prisoner a snitch poses a serious and life-threatening risk to an inmate for Eighth Amendment claims and for *all* claims. Regardless of the legal framework, the danger

to the prisoner remains the same. Appellees had ample notice that putting Snodgrass at risk of death or physical injury was unlawful, and that calling him a snitch would create that risk. Qualified immunity does not immunize their conduct.

## III. Appellees Ignore The District Court's Errors Regarding Snodgrass's Step-Down Program Retaliation Claim.

Appellees fail to meaningfully respond—or in some cases, respond at all—to Snodgrass's arguments about his Step-Down Program retaliation claim. Instead, they ask this Court to adopt the district court's findings without meaningful inquiry. It should not do so.

### A. SM-0 to SM-1.

The district court first erred by finding that Snodgrass failed to make out a *prima facie* case for retaliation regarding his delay from SM-0 to SM-1. Appellant's Br. 51-56. Contrary to the district court's finding, he *did* establish both the adverse act and causation requirements of a First Amendment retaliation claim. First, though the district court correctly determined that delaying a prisoner's stay in segregation would "deter a person of ordinary fitness from the exercise of their First Amendment rights," it inexplicably held that a nearly forty-day delay did not satisfy that element of Snodgrass's retaliation claim. *Id.* at 52-54. And

second, it erred by determining that Snodgrass did not demonstrate that his First Amendment conduct was a "substantial or motivating factor," despite substantial evidence of statements from Appellees that demonstrate just that. *Id.* at 54-56.

In response, Appellees' only argument is that this Court should defer to the district court's factual findings without question. AB 47. They say nothing about the district court's internally inconsistent finding that keeping Snodgrass in segregation for nearly forty extra days was not an adverse act—despite holding that delaying a prisoner's stay in segregation would have an adverse effect. JA372. Appellees also say nothing about their numerous "references" to Snodgrass about "filing paperwork," about "fighting other peoples' battles," and how if he did not stop filing grievances, he would not be released from segregation. *See* Appellant's Br. 55 (citing JA477-478). And they make no mention of how, by Appellees' own admission, there was no justification for withholding the Challenge Series workbooks. *Id.* at 56. Simply asking this Court to defer to the trial court, without more, is insufficient.

## B.    SM-1 to SM-2.

The district court also erred by ruling for Appellees on Snodgrass's retaliation claim concerning his delay from SM-1 to SM-2.  The first error was finding that he did not establish a causal connection between his protected conduct and his delay at SM-1.  *Id.* at 57-58.  In response, Appellees recite the district court's findings, arguing only that Snodgrass does not clearly identify which officer was responsible for which decision related to his inability to attend the classes necessary to progress.  AB 43-45.  Specifically, Appellees point to the district court's determination that the "undisputed evidence before the court" showed that two non-defendant treatment officers, Walker and Quillen, were responsible for Snodgrass's attendance.  *Id.* at 45 (citing JA734).  But Snodgrass *did* dispute that Walker and Quillen were the responsible parties.  As Snodgrass explained at trial, the treatment officers told him that other officers had instructed them "not to pull [his] group."  ECF No. 107, at 55:11-13.  When Snodgrass asked who gave that instruction, one of the treatment officers told him, "[y]ou have to take it up with your supervisor, with the unit manager."  *Id.* 55:18-23.  Snodgrass also testified that the parties responsible for blocking his progression were "Gilbert, Duncan, Gallihar,

the treatment officers." *Id.* 54:4-7. At the very least, there is a genuine dispute as to which officers were responsible for the decision to delay Snodgrass's access to his classes.

Appellees next argue that the district court properly concluded that Appellees showed they would have delayed Snodgrass's progression in the absence of his First Amendment activity as required by *Mt. Healthy & Martin II.* AB 48-50. Again asserting that this Court should simply defer to the district court without meaningful inquiry, Appellees also introduce a *fourth* justification for why they delayed Snodgrass's progression: his "progression . . . was based on him remaining charge free" and "the evidence showed numerous disciplinary infractions." AB 49.[2] But the evidence does *not* show this—during the relevant time period, the evidence showed *one* infraction that resulted from Snodgrass trying to bring stamps with him into the shower. JA465-466 (reflecting infraction for possession of contraband on May 16, 2016); ECF No. 84, at 474:22-25,

---

[2] Appellees have offered a rotating selection of reasons for this delay. Appellant's Br. 58–59. First, it was Snodgrass's failure to meet all the requirements of the Step Down program. *Id.* Then, it was having poor ratings in "respect," though how this was determined remains unclear. *Id.* And then, it was because Snodgrass's classmates in the Step Down program left the unit, which caused his cohort to be delayed. *Id.*

475:1-17 (Gilbert explaining the basis for the infraction). Not only is Appellees' characterization of one infraction as "numerous" misleading, but this rationale appeared nowhere in the district court's opinion as the basis for its decision.

Appellees also claim that Snodgrass's "poor ratings in . . . respect" were due to "profanity." AB 49. But the report in evidence indicating that Snodgrass was not "respect[ful]" says *nothing* about his profanity or any other explanation for what constituted a lack of "respect." JA462. In fact, Appellees admitted at trial that there is no specific criteria for determining "respect" ratings. JA480. Appellees cannot now fashion yet another distinct explanation for why they kept Snodgrass at SM-1, while claiming that Snodgrass has not "meaningfully challenge[d]" the district court's credibility determinations, AB 50. This Court should reverse.

## IV. The District Court Used The Wrong Standard When It Denied Snodgrass's Motion To Supplement The Complaint.

The district court applied the wrong legal standard error in denying Snodgrass's motion to supplement his complaint. Appellant's Br. 46-50. Rather than dispute this, Appellees argue that they would have been prejudiced by Snodgrass supplementing his complaint with allegations of Appellees' continued and related retaliatory conduct. But this argument

does not address the district court's error: that it used the wrong legal standard.

Even assuming the district court had applied the correct standard, Appellees' argument that granting Snodgrass's motion would have prejudiced them must fail. They claim that allowing Snodgrass to supplement his complaint would have delayed resolution of their summary judgment motion, but Snodgrass submitted his supplemental complaint via the mail *one day* after their motion was filed. This is not a situation in which a supplemental pleading would have prejudiced Appellees due to its timing. *Compare Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) ("A common example of a prejudicial [supplement] is one that . . . is offered shortly before or during trial.").

Appellees also argue they would be prejudiced because the supplemental complaint would "broaden the scope of the case (and potentially discovery)." AB 63; *see id.* at 61-62 ("[P]rejudice can result from an amendment that causes 'additional discovery, cost, and preparation to defend against new facts or new theories,'" especially when defendants have 'moved for summary judgment.'") (citing *Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1278 (10th Cir. 2001)). But when Appellees

moved for summary judgment, they had not produced *any* discovery. *See* Defs' Mot. for Protective Order, ECF. No. 19, at 2 (requesting that "*no discovery* should be permitted by this Court") (emphasis added). In *Walker*, the only case that Appellees' cite in support of this argument, the plaintiff tried to introduce a claim during a pretrial conference nearly a year after she filed her complaint and after the parties had exchanged substantial discovery. 240 F.3d at 1271, 1278. The court denied the motion to supplement because it was "so late in the day in terms of the original issues in the case," given that "[d]iscovery was closed, [and the defendant] was ready for trial or for the alternative of summary judgment[.]" *Id.* at 1278. These concerns were not at issue here.

In fact, it was Snodgrass who suffered prejudice by not being permitted to supplement his complaint. Appellees' arguments to the contrary do not refute this. First, Appellees assert that the district court "explicitly considered" the allegations contained in the supplemental complaint at summary judgment through Snodgrass's other papers. AB 64. This is wrong. For example, the only mention of Snodgrass's allegation that Gilbert called him a "[d]umb [f]---ing [n]----r" was a one-sentence acknowledgement when the district court granted Appellees' motion for

summary judgment. *See* JA388. After that passing reference in the background section of the opinion, the district court ignored the allegation, likely reasoning that the fact was immaterial because—as the magistrate judge had previously decided—this fact did not "arise from the same sequence of events." *See* JA372. As explained, this was an impermissible rationale. Appellant's Br. 46-50.

Second, Appellees insist that Snodgrass was able to "fully explore" the allegations in his supplemental complaint during trial. AB 65. Even if this were true (which it is not), Snodgrass's first trial occurred *10 months* after the district court rejected his supplemental complaint, and his second trial occurred *21 months* after that. JA371, JA467, JA600. Had the district court allowed Snodgrass to supplement, he could have developed his new claims during that period. His inability to do so prejudiced him.

More fundamentally, Appellees' arguments rest on the false premise that Snodgrass's supplemental allegations were only relevant to a claim that survived summary judgment—the retaliation claim related to his delay in segregation. But Snodgrass did not advance just *one* retaliation claim under the First Amendment. He also brought a distinct claim

that Gilbert impermissibly held him in solitary confinement in retaliation for filing this lawsuit. JA208.

Snodgrass also alleged facts in his supplemental complaint that had bearing on his Eighth Amendment excessive force claim against Gilbert. *See supra* Section I. That claim ultimately turns on whether Gilbert acted in bad faith or with a malicious or retaliatory motive. *See, e.g.*, *Brooks*, 924 F.3d at 113. Relevant to this analysis is whether the prison guard's conduct was motivated by racial prejudice. *See, e.g.*, *Tedder*, 527 F. App'x at 273. Although the incidents in Snodgrass's supplemental complaint postdate his excessive force claim, Gilbert's racial animus and repeated confessions to retaliation are relevant to "whether the prison official acted with a sufficiently culpable state of mind." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).

The district court's denial of Snodgrass's supplemental complaint was not harmless error—it materially prejudiced him. Snodgrass could not obtain discovery on critical allegations bearing on numerous causes of action. That he subsequently mentioned these allegations does not eliminate the prejudice: after wrongly deciding it would not allow Snodgrass to "expan[d]" his lawsuit to include facts not stemming from the

"same sequence of events," JA372, JA388, the district court adhered to that ruling. In a case about official misconduct and abuse of power, the district court's failure to meaningfully consider such explosive allegations—including a prison guard calling a Black prisoner a "F---ing [n]----[r]"—is harmful error. This Court should reverse.

# CONCLUSION

For the foregoing reasons, this Court should (1) reverse the district court's order granting summary judgment on Snodgrass's claims of retaliation based on being publicly labeled a snitch and his Eighth Amendment claim for excessive force, (2) reverse the district court's order denying Snodgrass leave to supplement his complaint, and (3) vacate the district court's order entering judgment for Appellees on Snodgrass's retaliation claim based on his delayed progression through the Step Down Program.

Dated: October 21, 2024

Respectfully submitted,

/s/ Meredith N. Garagiola
Benjamin D. Singer
Meredith N. Garagiola
   *Court-Assigned Counsel*
Virginia N. Oat
Brian P. Quinn
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, D.C. 20006-4001
(202) 383-5300 (telephone)
(202) 383-5414 (facsimile)

*Counsel for Plaintiff-Appellant*
*Kevin Snodgrass, Jr*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(ii) because it contains 6384 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Century Schoolbook 14-point font.

<u>/s/ Meredith N. Garagiola</u>
Meredith N. Garagiola

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 21st day of October, 2024, I electronically filed the foregoing with the Clerk of the Court using the appellate CM/ECF system. All participants are registered CM/ECF users, and will be served by the appellate CM/ECF system.

/s/ Meredith N. Garagiola
Meredith N. Garagiola